## VOSE v. HANDY.

Where several particulars are named, descriptive of the land intended to be conveyed in a deed, if some are false or inconsistent, and the true are sufficient to designate the land, those which are false and inconsistent will be rejected.

If it appears that a debt secured by mortgage has been paid, the mortgagee, in a writ of entry upon his deed, cannot have judgment for possession of the land.

In this State the assignment of a mortgage must be by deed.

A bond may be assigned by delivery only, for a full and valuable consideration.

THIS was a writ of entry on the demandant's own seisin in fee and in mortgage, in which he demanded possession of " a " parcel of land in *China*," [formerly *Harlem*] " part of lot No. " 29, according to a survey and plan made by *John Jones*, and

Vose *v.* Handy.

" bounded as follows, beginning on the east side of twelve-mile-
" pond at the *south-west* corner of said lot, thence running east
" south-east one mile, thence northerly fifty rods, thence wester-
" ly, parallel with the south line one mile to said pond, and
" thence southerly by said pond to the bound first mentioned,
" containing one hundred acres more or less."

At the trial, which was upon the general issue, it appeared on
the part of the demandant that *June* 30, 1803, *Dan Read* con-
veyed to *Nathan Dexter* " a certain tract of land in *Harlem*
" bounded on lot No. 30, at the pond, thence running east-south-
" east 320 rods, thence northerly fifty rods, thence west-north-
" west to the pond, thence southerly to the first mentioned
" bounds, it being the south half of lot No. 29, agreeably to
" *John Jones'* plan, containing one hundred acres, more or less."

It further appeared that *Dexter, September* 17, 1804, conveyed
to one *Fowle* " a certain tract of land in said *Harlem* being lot
" No. 29 of the range of lots adjoining the eastern side of
" twelve-mile-pond according to *John Jones'* plan of said town
" of *Harlem*, and bounded as follows, beginning on the easterly
" side of said pond, at the *south-west* corner of said lot number
" 29, and running easterly one mile, thence northerly fifty rods,
" and thence westerly one mile to said pond, thence to the
" bounds first mentioned, containing 100 acres, more or less."

At this time *Dexter* lived on the south half of lot No. 29, be-
tween which *lot* and the lot No. 28, there was an eight-rod
range-way. Another man dwelt on the *north* half of lot No. 29,
claiming title, and a third person dwelt on the south half of lot
No. 28, who also claimed *that* land. *Fowle* entered under his
deed from *Dexter*, and continued in the actual occupancy of
the land till the year 1816.

It further appeared that *Fowle, September* 26, 1805, mortgaged
to the President, Directors and Company of the *Hallowell* and
*Augusta* Bank, *incorporated March* 4, 1804, to secure the pay-
ment of his bond of that date for 500 dollars and interest,—
" a certain piece of land in *China*, formerly *Harlem*, being lot
" No. 29, adjoining the eastern side of twelve-mile-pond accord-
" ing to *John Jones'* plan, and bounded as follows, to wit, begin-
" ning on the easterly side of said pond at the *north-west* corner
" of said lot, and running easterly one mile, thence northerly

" fifty rods, thence westerly one mile to said pond, and thence
" to the first mentioned bounds, containing 100 acres, more or
" less."

It further appeared that the demandant at the Court of Common Pleas, *April* term, 1822, recovered judgment against that corporation, and by virtue of a writ of execution duly issued thereon and agreeably to *Stat.* 1821. *ch.* 60. all their right and title in the said debt and land mortgaged to them was sold at public auction by the sheriff to the demandant, *June* 8, 1822, he being the highest bidder, and a deed thereof duly made to him and recorded the following day, describing the land as in the mortgage deed, adding the words ". or however otherwise bounded."

The lots on *Jones'* plan contain each 200 acres, and are thus situated :—

NORTH.

| | No. 28. | |
|---|---|---|
| WEST. POND. | No. 29. | EAST. |
| | No. 30. | |

SOUTH.

The tenant, to support the issue on his part, proved that the bond and mortgage *February* 1, 1814, were *delivered* by the *old* corporation to the President, Directors and Company of the *Hallowell* and *Augusta* Bank, *incorporated June* 1812, and that the latter corporation thereupon paid to the former the whole money due thereon, in full for said bond and mortgage.

He also proved that the latter corporation brought an action against *Fowle* on the mortgage deed at the Court of Common Pleas *April* term 1815, setting forth *an assignment thereof by deed* from the former corporation to them, bearing date *December* 1814 ;—that judgment was rendered therein for possession at the *August* term following, upon default ;—and that the writ of possession thereon was executed *January* 10, 1816, on which day the demandants in *that* suit made a lease of the premises to *Fowle* for three years. The bond and mortgage were both filed in that case, but without any written transfer or assignment thereon.

Vose v. Handy.

He also proved that *Fowle* by his deed dated *December* 20, 1816, conveyed to the tenant all his right and title to " a tract " of land—being lot No. 29—bounded, beginning on the easter- " ly side of said pond *at the north-west corner of said lot No.* 29, " and running easterly one mile, thence southerly fifty rods, " thence westerly one mile to said pond, thence by said pond " to the point begun at, containing 100 acres, more or less" ;— and that thereupon *Fowle* removed from that town, and the ten- ant entered under his deed, and has ever since continued to occupy the *south half of lot No.* 29.

He also proved that the corporation to whom the bond and mortgage were delivered as aforesaid, released to the tenant *July* 22, 1820 all their right in the mortgaged premises on pay- ment by him of the money due on the bond.

There was no evidence that the corporation against whom the demandant recovered his said judgment, or the members' thereof, ever assented to the act passed *June* 19, 1819 for con- tinuing the existence of certain bodies corporate of which that corporation was one, for certain purposes therein specified.

Upon this evidence a verdict was taken for the demandant, subject to the opinion of the Court upon the general question whether, upon the whole matter, the action was sustainable ; the parties agreeing that if the Court should not be of opinion with the demandant, a new trial should be granted.

*Bond,* for the tenant, argued against the verdict, taking the following points.

1. The charter of the old bank having expired by its own limitation long before the passage of the statute of *June* 19, 1819, that corporation was dissolved. The legislature cannot compel one to become a corporator without his assent ; nor im- pose a new charter on an existing corporation without its ac- ceptance. But here was no acceptance of the statute of *June* 1819, and so no corporation in existence in *April* 1822, against which the demandant could recover a judgment. *Ellis v. Mar- shall,* 2 *Mass.* 269. 4 *Wheat.* 675. *Lincoln and Kennebec Bank v. Richardson,* 1 *Greenl.* 79. *That* judgment therefore was merely void ; and there being no party to bring a writ of er- ror for its reversal, it may be avoided by plea. 3 *Com. Dig. Error. D.* And where a corporation is extinct, its funds be-

come the private property of the corporators, and its lands revert to the grantors. 1 *Bl. Com.* 484. 1 *Lev.* 237. *Co. Lit.* 13 *b.*

2. The boundaries in the deed to the demandant do not include the land demanded, but describe a tract lying north of it. And when the description of land in a deed has a well known place of beginning, that must govern, and the grant be confined to boundaries. 17 *Johns.* 146.

3. At the time of the demandant's judgment against the old bank in *April* 1822, nothing was "due" to that corporation from *Fowle*—*vid. Stat.* 1821, *ch.* 60—and so nothing passed to the demandant by the sheriff's deed. The *debt* was the principal thing, without which the land could not be affected. But here the bond and mortgage had long since been assigned from the old bank to the new. And the *actual delivery* of a bond and mortgage to another is a valid transfer of both, determining the interest of the assignor in them both. 1 *Johns.* 580. 11 *Johns.* 534. 17 *Johns.* 284. 2 *Burr.* 978. 11 *Mass.* 134.

4. If the assignment of the mortgage is not effectual without deed, here is evidence of such assignment;—for in the writ by the new bank against *Fowle* it is recited that the mortgage was assigned by deed, which is admitted by *Fowle's* appearance and default.

5. And if this is not sufficient, yet here is a legal assignment of the *bond* by *delivery* from the old to the new bank, for a full and valuable consideration, of which *Fowle* had notice by the suit against him, so that no payment by him to the old bank could have been valid. If this assignment is entitled to the protection of law, the old bank had no "debt" due from *Fowle.* 12 *Mass.* 281. 13 *Mass.* 304. 15 *Mass.* 481.

6. If neither the bond nor the mortgage were legally *assigned*, yet the bond was *paid* in *July* 1820 to the officers of the new bank, with whom it was *deposited for collection ;* and this payment whether before or after breach, is a discharge of the mortgage.

7. The *Stat.* 1821. *ch.* 39. *sec.* 3. provides that the judgment in an action like the present, on a mortgage, shall be *conditional*, that if the tenant shall within two months pay the money due on the bond, no writ of possession shall be issued. But here

Vose v. Handy.

*nothing* is due. To what purpose then can a judgment be rendered for the demandant ?

*Orr* and *R. Williams*, for the demandant, contended—1. that the deeds should be so construed as to effectuate the intention of the parties; and that an erroneous description shall not avoid that which is otherwise sufficiently certain. 5 *East.* 51. 3 *Bac. Abr. Grant, H.* 1. *note.* 1 *Caines,* 493.

2. As to the right of the legislature to revive and continue in force the charter of the old bank, they cited *Foster v. The Essex Bank,* 16 *Mass.* 245. But the objection that the demandant's judgment was against a corporation not *in esse* is not open to the tenant, because he does not claim under *that* corporation, but under the *new* bank.

3. By the *Stat.* 1821. *ch.* 60. a copy of the mortgage deed is made *prima facie* evidence of a " debt due" to the bank.

4. The debt thus due was never *paid,* nor was the bond or the mortgage ever legally assigned to the new bank. The payment of money by the tenant to the new bank was no payment or discharge of the bond, because it was not so intended, and because he had no authority from the obligor. Nor had he a right to redeem the land. The interest of the *mortgagor* was not conveyed to him ;—the deed of the new bank to him was not of the land mortgaged.

As to the *assignment.*—The case finds a delivery from the old to the new bank. This, being an act *in pais,* must be. proved by shewing some *authority* to do it, for a corporation cannot act by *parol.* 7 *Mass.* 102. 8 *Mass.* 292. But if it might, yet the delivery here would be of no effect, because the interest of a mortgagee in lands cannot be transferred by delivery over of the deed. *Powell on mort.* 23—4, 225—6, 247, 271—2, 1127 —8. 5 *Bac. Abr. Mortg. C. E.* 8 *Mass.* 554. 3 *Mass.* 559. 11 *Mass.* 125. 17 *Mass.* 419. It is not assignable at law. 6 *Mass.* 239. Being an interest in lands, it can only pass by deed, by the statute of frauds. *Warden v. Adams,* 15 *Mass.* 233. If the delivery over in this case were a good assignment, then the new bank might have an estate in mortgage, and afterwards in fee, *without deed.*

Neither was the *bond* assigned. The bond and mortgage being parts of one entire contract, one part could not be assigned without the same solemnity which would be necessary to transfer the other; and the mortgage being assignable only by deed, the bond must pass by deed also. *Perkins v. Parker,* 1 *Mass.* 123. 2 *Mass.* 96. 3 *Mass.* 558. 4 *Mass.* 450. 11 *Mass.* 488. 12 *Mass.* 193. The *New-York* decisions to the contrary have never been recognized here as law.

MELLEN C. J. at the succeeding term in *Cumberland,* the action having been continued *nisi* for advisement, delivered the opinion of the Court as follows.

We have listened with much pleasure to the able arguments which have been urged by the counsel on both sides; and carefully examined and considered the principles and cases that have been relied upon.

Both parties claim under the mortgage-deed made on the 26*th* of *April* 1805, by *Daniel Fowle* to the bank incorporated in 1804. In speaking of *this bank,* for brevity's sake, we call it the *old bank*; and the other, which was incorporated in 1812, we shall call the *new bank.*

The premises demanded are not bounded and described in the mortgage in the same manner as in the declaration; but this will be more particularly noticed hereafter. The *demandant's* title, as he has disclosed it, is under a judgment recovered by him at the Court of Common Pleas, *April* term 1822, against the *old bank* for $2833,42, on which execution duly issued; by virtue of which, on the 3*d* of *June* 1822, *Kimball,* a deputy sheriff, sold at public auction all the right and title of the *old bank* acquired by said mortgage deed, and to the debt, to secure which the deed of mortgage was made, to the *demandant* who purchased the same; and the officer on the same day gave a deed of the premises, so sold to him; which deed, on the next day, was duly registered. It has been contended that, independent of the facts disclosed in the defence, the *demandant* is entitled to recover upon those which he himself has proved.

The *first* objection is that the charter of the old bank had expired long before the judgment abovementioned was recovered, *viz.* in *October* 1812. And though it was continued for

Vose v. Handy.

certain purposes by the act of *June* 24, 1812, to *October* 1816 ; and by the act of *December* 14, 1816, for three years longer; and afterwards by the act of *June* 19, 1819, for three years longer ; still it has been contended that the old bank never *assented* to this extension ; and that *without such assent,* those extending acts never were binding on them ; because such extending is in the nature of a *new charter ;*—and that no charter can ever bind those to whom it is granted, without their acceptance of it. It is very questionable whether it is competent for *third persons* to make this objection ; and not only so, but in so doing, to impeach the *merits of a judgment* in this collateral manner. But we do not proceed on this ground, nor is it necessary ; because we consider the case of *Foster v. Essex Bank,* 16 *Mass.* 245, and *Lincoln and Ken. Bank v. Richardson,* 1 *Greenl.* 79, as deciding the merits of this objection.—The counsel for the tenant has relied upon an apparent discrepancy between these two cases as to the necessity of the *acceptance* of an act *continuing* a charter of a bank. There is perhaps a want of clearness, perhaps some inaccuracy of expression, in that part of the opinion in the *latter* case, which relates to this point. But it will be seen that the Court in that case, declared themselves perfectly satisfied with the reasoning and conclusion of the Court in *Foster v. Essex Bank,* and that the same principles ought to govern *both* cases. The C. J. of this Court stated that the same principle of law applied to an act, *continuing* a charter beyond its original term, as to an act, which *granted* the charter ; that in both cases, the *grant* or *chartered powers* must be *accepted.* The above remarks were made in a case where a bank was *plaintiff* and the language used had reference to *chartered powers,* not *corporate liabilities.* The question of *liabilities* had been settled on sound principles in *Foster v. Essex Bank ;* the opinion in that case had been approved and adopted by this Court ; and in *both cases* those *liabilities* related to debts contracted *prior* to the expiration of the *original charter.* Hence it appears that the expression *thus limited* and understood, does not, nor was it intended to convey an idea at variance with the opinion in the case last mentioned. This objection therefore we overrule.

The *second* objection, founded on the defects in the *demand-ant's own proof*, is, that the land sold by the officer, and convey-ed to him is not the *land demanded;* inasmuch as the descrip-tion in the deed of the officer, though agreeing with that in the mortgage, varies essentially from that in the declaration; and in fact embraces *no part* of lot *No.* 29, but the southerly half of lot *No.* 28 on *Jones'* plan. There certainly is a mistake; and it arose from the circumstance of using the word " north-west" instead of " southwest" in commencing the description of the land intended to be conveyed, both by the mortgagor and the officer, which was the *south half of lot No.* 29. It may again be observed that both parties claim under the same mortgage deed; and in the deed from *Fowle* to the tenant, exe-cuted on the 16*th* of *December* 1816, and conveying all his right, we find the same erroneous description, occasioned by the sub-stitution of the word " northwest" for " southwest."

Our attention is then directed to the following facts, viz. that *Dexter* the *grantor* of *Fowle,* lived on *the south half of No.* 29, when he conveyed to *Fowle,* and *Fowle* went into possession of *that half* of *No.* 29, under *Dexter's* deed ; and continued there-on until 1816, when he sold his right to the tenant as before stated ; that another man at the time lived on the *north half* of lot *No.* 29, claiming it as his own; and the *south half* of No. 28, was occupied by a person *then* and ever since residing thereon ; there being also an eight rod range-way between *Nos.* 28 and 29. Besides, the mortgage and the officer's deed both purport to convey a part of lot *No.* 29.

With all these facts before us, we must collect the intention of the parties concerned, and give effect to the deeds according to such intention, if legal principles do not forbid it. Where several particulars are named, descriptive of the premises con-veyed, if some are false or inconsistent, and the *true* be suffi-cient of themselves, they will be retained, and the others re-jected, in giving a construction to the deed; as in case of *Wor-thington & al. Ex'rs. v. Hylyer,* 4 *Mass.* 196. See also *Jackson v. Clark,* 1 *Johns.* 217. The land described as conveyed, in the case before us, is part of *lot.* 29 ; which it *cannot be,* on the sup-position that the word " northwest" was used intentionally and without any mistake ; but if we compare the description in the

Vose *v.* Handy.

deeds with the facts above stated, as to the ownership and oc-
cupation of the *north half of No.* 29, and the *south half* of *No.*
28 ; and the constant possession of the *south half of No.* 29,
by *Dexter* and *Fowle*, the intention seems clear ; and for the
purpose of giving effect to the deeds we ought to reject the
word " northwest" altogether. The description then will be
sufficiently explicit ; it will include the *south* half of the lot men-
tioned, *viz. No.* 29, and cannot include any other ; and con-
form also to the ownership and possession of *that half* and of
the adjoining land. If it were necessary to decide the cause
on *this* point, we incline to the opinion that such would be our
construction. But our decision is founded on certain facts
which have been disclosed and relied on in the defence. Some
of those facts we proceed to mention.

It appears that on the *first* of *February*, 1814, the said mort-
gage deed and the bond, to secure the payment of which, the
mortgage was given, were delivered by the *old bank* to the Presi-
dent, Directors and Company of the *new bank*, who thereupon
paid to the *old bank* the sum of $590, being the *whole amount due*
on the bond and mortgage. There was no written transfer or
assignment *thereon ;* nor does it appear by any testimony in the
case, that there was any assignment whatever *in writing,* of
either of them. The transaction however, such as it was, be-
tween the *old bank* and the *new bank*, in relation to the bond and
mortgage, it is contended by the counsel for the tenant, amounts
to a legal assignment of them *both ;* but, if not of *both*, at least,
of the *bond* and the *debt* thereby secured ; and that, of course,
there was no interest, in the *old bank*, in the bond, debt or mort-
gage, which could have been legally sold and conveyed to the
demandant by virtue of the Statute of 1821, *ch.* 60. The pro-
visions of that statute relating to the subject, are contained in
the *fourteenth* and *fifteenth* sections. They deserve particular
consideration, as they are peculiar in their nature, and form
exceptions to the general law relative to this species of proper-
ty.—The *fourteenth* section is in these words, viz. : " That all
" the right, title, claim and interest of any bank now incorpor-
" ated, or which hereafter may be incorporated by law, in any
" lands, tenements, or hereditaments, which has been or shall
" be mortgaged for security of any debt due or assigned to such

" bank, shall be liable to be seized on any writ of execution
" issued on any judgment rendered, or which may hereafter be
" rendered by any Court in this State, and sold at public auc-
" tion in the same manner as is prescribed for the sale and con-
" veyance of the real estates of such banks in this act." The
provisions of the 15th section, so far as necessary to be exam-
ined upon this point, are in these words, viz. " That any
" debts secured by *such* mortgage and *due to such bank at the
" time of the sale of such mortgage*, shall pass by the deed of
" conveyance, executed by the officer who shall serve such
" writ of execution, and be completely, and to all intents and
" purposes transferred to, and vested in such purchaser; and
" such purchaser or his legal representative may, in his
" own name, maintain any action proper to recover *such debt*,
" or to obtain possession of *such lands, tenements,* or *heredita-*
" *ments*, which might have been maintained in the name of such
" bank, *had no such sale been had.*"     From a view of these provis-
ions, it is evident that the cases provided for, are those in which
a bank is either *mortgagee or assignee* of a mortgage, and the
*debt*, secured by such mortgage, is *due to such bank* at the time
of seizure and sale on execution.—The last member of the
sentence above quoted plainly shews this; as it gives the *pur-
chaser* the same right to *recover the debt*, and obtain possession
of the *premises*, as the bank would have had, if there had been
no sale.—The law is founded on the idea that the *real* and the
*personal* security are both holden and owned by the bank; be-
cause the provision is special and particular that a *sale of the
mortgage* shall operate to pass and convey to the purchaser any
*debt* secured by such mortgage and then due to the bank; and
this is reasonable; because the bond need not be recorded,
but the mortgage usually is.  Hence a *copy* of the deed is by
statute made *prima facie* evidence of the *deed* and of the *bond*
or *note* on which the mortgage is founded.  The provision
seems also conformed to the principle and practice which re-
quires that a mortgagee, in a suit on the mortgage deed, before
he can obtain his conditional judgment, must file or produce in
Court the bond or note on which the mortgage is founded; that
the Court may know what payments have been made, and how
much is due in equity and good conscience: for *such sum only*,

Vose v. Handy.

can the conditional judgment be rendered; and if *all* the debt has been paid by the mortgagor or his representatives or as-signs; or if the mortgagee has assigned the *bond* or note for a *full consideration paid to him*, there is no reason in law or justice why he should have *any* judgment whatever in his favour, though he never has assigned the mortgage.

We have now arrived at the principal inquiry in the cause, which is, whether any property or interest passed to the de-mandant, by *Kimball's* sale on the execution; or in other words, whether prior to that time, the *old bank* had divested itself of all title and right in and to the demanded premises, by the al-leged assignment to the new bank in 1814, as before stated.

It was intimated by the counsel for the tenant that there was proof of an assignment of the mortgage by deed to the new bank; because that averment is contained in the declaration in the suit by the *new bank* against *Fowle* wherein judgment was rendered on default, at *August* term, 1815. But though this judgment might estop *Fowle*, it cannot have any such effect in respect to the demandant—a stranger to that suit.

Several cases have been cited from *Johnson's Reports* by the counsel for the tenant, to show that a mortgage may be assign-ed by parol or by delivery merely. Those from 1 & 11 *Johns.* are strong in favour of the tenant, and go very far towards sup-porting the position of the counsel. But we are well satisfied that the principles of law upon this point have never been car-ried so far in *Massachusetts* or in this State. Our statute of 1821, *ch.* 36. seems decisive of this question; and to require that the assignment of a mortgage should be made by deed.— The form of declaring in an action by the assignee of a mort-gage against a mortgagor shows this; it is always alleged that by virtue of the deed of mortgage, the mortgagee became *seiz-ed in fee;* this very averment shews that *such* an estate cannot be conveyed to the assignee but by *deed.* The case of *Martin v. Mowlin*, 2 *Burr.* 970, has so long been the subject of critical animadversion by Judge *Trowbridge* and many learned Judges since his time, that it cannot be deemed an authority. Indeed the cases of *Gould v. Newman*, 6 *Mass.* 239. *Warden v. Ad-ams*, 15 *Mass.* 233, and *Parsons v. Welles*, 17 *Mass.* 419, render a further examination, on our part, of this point in the defence wholly unnecessary.

The only question then remaining is, whether the delivery of the bond accompanied, as it was, by the mortgage deed, by the old bank to the new bank, and the receipt from them of the whole amount due on the bond and mortgage, amounts in law to an assignment of the bond and the debt due thereby; for if so, then the sale by *Kimball* was wholly ineffectual, and the verdict must be set aside.

We had occasion, in the case of *Clark v. Rogers* [*ante p.* 143.] to remark that for many years Courts of Justice had been gradually becoming more and more inclined to protect equitable interests; that less form is necessary now than formerly, as to the mode of creating such interests; that the object has been to ascertain that it *was* an interest founded in *equity and justice,* and on *good* and *adequate* consideration. A series of cases decided in *Massachusetts* prior to our separation, will show the correctness of the above remark. In *Perkins v. Parker,* 1 *Mass.* 123. the Court doubted whether an assignment must not be *by deed.* In *Quiner v. Marblehead Social Insurance Company,* 10 *Mass.* 476. it was decided that an assignment *need not be by deed ;* but that the delivery of the certificate with an indorsement upon it for a valuable consideration, was a sufficient transfer of the right to become a stockholder. In *Brown v. Maine Bank,* 11 *Mass.* 153. an assignment of a judgment and execution by a writing on the back of the execution, for valuable consideration, was holden to be good. In *Mowry v. Todd,* 12 *Mass.* 281. the Court held that an assignment on the back of a contract *written* but not *signed,* and the contract *handed over* to the alleged assignee, was a valid assignment, if assented to by the person who was bound by the original contract. In *Jones v. Witter,* 13 *Mass.* 304. a negotiable promissory note, for an adequate consideration, was assigned by *delivery only,* and held good. The *Chief Justice* says, "There are cases in the old books which shew "that debts and even deeds may be assigned by parol, and we "are satisfied there is no sensible ground upon which, a writing "shall be held necessary to prove an *assignment of a contract,* "which assignment has been executed by *delivery* any more "than in the assignment of a personal chattel."

In the case of *Dunn v. Snell,* 15 *Mass.* 181. the Court went farther still, and decided that a mere *delivery over* of an execu-

tion, was an assignment of it, and of the judgment. And in *Prescott v. Hull*, 17 *Johns.* 284. *Spencer C. J.* delivering the opinion of the Court, and speaking of the validity of assign-ment, says—" I do not consider the want of a seal essential ;—" the mere *delivery* of the *chose* in action, upon good and valid " consideration, would be sufficient, *even were it a specialty.* It " ought however to be alleged that the assignment was for a " full and valuable consideration."

The *new bank*, claiming under the assignment from the *old bank*, commenced their action against *Fowle* (in which they de-clared as assignees of the mortgage) and obtained judgment in *August* 1815 ;—of course, this amounted to *notice* to *Fowle* of the assignment, and the claim of the *new bank* under it. After this, *Fowle* would not have been justified in paying the debt to the *old bank.* The *new bank* had the custody of the bond, and might legally cancel it, or release the debt ; and if the *new bank* had commenced an action on the bond in the name of the *old bank*, after the assignment was made, the Court would not have suffered the *old bank* to become nonsuit or discharge the action.

On the whole, we are satisfied, after a long and laborious in-vestigation, that the action cannot be maintained ; and accord-ingly the

*Verdict is set aside, and a new trial granted.*