Merrell, J.
This action was brought in the trial court by plaintiff in error against defendant Blinn on a promissory note, and on a chattel mortgage executed by said Blinn to secure said note. Defendants Sheldon and Thorinly were joined as parties interested in the property mortgaged, under a subsequent chattel mort-gageexecuted by Blinn to Sheldon, and by him sold with the note thereby secured to defendant Thorinly. The petition of plaintiff alleges that there is due and unpaid from defendant Blinn to plaintiff on said promissory note the sum of $270.06, with interest from May 23, 1891, at 12 per cent, per annum. This is admitted by the answer of all the defendants, and is established by satisfactory and unconflict-ing proof. The judgment is against plaintiff for costs. This is error for which the judgment must be reversed. There is no possible view which may be taken of this case which can deny the plaintiff judgment on his note against the defendant Blinn.
The issue raised by the pleadings, and litigated in the trial court, is as to priority of liens under the Graham and Sheldon mortgages. Only defendants Sheldon and Thorinly appear in this court to resist the reversal of the judgment. Their interest in the litigation was only as to the question of priority of liens under the two mortgages. The adjudication of this question was in their favor. They claim that this adjudication is correct, and according to the law and the evidence in the cause, and that the judgment that they go hence without costs was, as to them, not erroneous. The material facts as to these chattel mortgages are substantially as follows: The mortgage to plaintiff, Graham, was executed by defendant Blinn on September 13, 1888, to secure the payment of $500, the amount of a promissory note of the same date, with interest at the rate of 12 per cent, per an-num, also executed by defendant Blinn in favor of plaintiff, Graham. This mortgage was filed with the county clerk on October 13,1888, but no affidavit for its renewal under the statute was ever filed,, although the promissory note thereby secured was, according to its terms, due one year after its date. The Sheldon mortgage was executed April 7,1891, to secure the payment of the amount of a note of that date, executed by defendant Blinn in favor of defendant Sheldon, for $375, with interest thereon. An objection is made to this mortgage that it does not state that it is intended for security, and the amount for which it is security, as required by our statute on the subject of chattel mortgages. The instrument is in a very common form of chattel mortgages. Part of the conditions of defeasance is as follows: “Provided, nevertheless, that if the said party of the first part, his heirs, executors, administrators, or assigns, shall well and truly pay unto the said party of the second part, his heirs, executors, administrators, or assigns, the sum of three hundred and seventy-five dollars, within sixty days after the execution of this instrument, with interest thereon at the rate of one and one half per cent, per month from date till paid, according to the conditions of a certain promissory note, ” ete.; and one of the conditions of the instrument is: “Incase default shall be made in the payment of the said principal sum of money hereby intended to be secured,” etc. No words could more plainly show that this instrument was intended for security, and the amount for which it is security. Besides, the entire instrument purports on its face to be a “chattel mortgage,” and not an absolute bill of sale. A chattel mortgage is always intended as security, and no particular form of words is required to show the amount secured.
The real question in the cause is, which of the two mortgages has the prior lien ? This question was adjudicated in the trial court, and it is proper that it be considered here. This question does not affect the defendant Blinn, as both mortgages are valid and of full force as against him. The question is between plaintiff, Graham, and defendants Sheldon and Thor-inly. The charges of confederation between the three defendants to defraud plaintiff by means of the Sheldon mort *749 gage are not proven. Sheldon’s mortgage was taken by him for a valuable consideration, but with full knowledge on his part that the mortgage debt of Blinn to Graham had not been paid or the mortgage canceled, though the term for which it was given had expired more than 60 days before, — in fact, more than 18 months before, — and no affidavit of renewal had been filed or notice of foreclosure given. The consideration of the Sheldon mortgage, and the note thereby secured, was to secure Sheldon against loss on a certain promissory note, which he had signed as joint maker with Blinn, the proceeds of which were paid to the latter, a part of which was to be paid in the discharge of the sum due on the Graham note and mortgage, but which Blinn omitted to pay. Without discussing the question as to Sheldon’s position, in view of the fact that he took his mortgage with full notice of the existence of the mortgage from Blinn to Graham, and that it was not renewed by affidavit, and was void as to subsequent mortgagees and purchasers in good faith, and whether or not Sheldon’s act in taking his mortgage with such knowledge of the existence of the mortgage, good as between Graham and Blinn, was mala tides, we shall consider only the attitude of Thorinly, he being a subsequent purchaser of the note, before its maturity, executed by Blinn to Sheldon, and payable to the order of the latter. The mortgage was not assigned in writing, but from the testimony appears to have been transferred by delivery from Sheldon to Thorinly at the time the note was sold, indorsed, and transferred. It is contended that the evidence does not show that the mortgage securing the note made by Blinn, payable to the order of Sheldon and transferred by him to Thorinly, was ever transferred and delivered by Sheldon to Thorinly, but we think that the evidence discloses this fact. There was no written assignment of this mortgage, but that was not necessary. Our law on chattel mortgages does not require this, although it makes provision for a record of such assignments. The main object of such a record is to give notice to the mortgagor of the transfer, so that he may make tender of the amount due to the proper party, the owner of the mortgage; but, where the note has been assigned, he could not well make tender to the payee of the note, but would necessarily make it to the bona tide holder thereof. We do not see that the matter of the nonrecord of the assignment of this mortgage from Blinn to Sheldon to Thorinly concerns Graham at all, as he is not interested in knowing in whose hands either the note or mortgage may be. The transfer of a note carries with it the security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. Carpenter v. Longan, 16 Wall. 271. Boyd v. Parker, 43 Md. 182. Even the cases cited by the learned counsel for plaintiff in error establish and approve this doctrine. Ramsdell v. Tewksbury, 73 Me. 197; Vose v. Handy, 2 Me. 322; Robbins v. Bacon, 3 Me. 346, 349; Crain v. Paine, 4 Cush. 483; Prout v. Root, 116 Mass. 410. See, also, Mott v. Clark, 9 Pa. St. 399; Pryor v. Wood, 31 Pa. St. 142.
As this is an equitable suit, the rights of Thorinly certainly ought to be protected; and it seems such rights as his will be respected and enforced in courts of law, as a scrutiny of the foregoing authorities will reveal. The testimony doesnotshow that Thorinly, the indorsee of the note, and, in fact, the assignee of the mortgage, ever had any knowledge of the existence or validity of the mortgage from Blinn to Graham, although his assignor, Sheldon, had such notice at the time of the execution of his note and mortgage. The testimony shows directly and positively the contrary, that Thorinly did not know that the lien of Graham was still in force between the latter and his mortgagor, Blinn. Thorinly was therefore bound only by the notice of the record, and from that he could only ascertain that there had at one time been a mortgage lien on the property, but that, as to him, an innocent purchaser, in good faith and for value, it was void by direct statutory provision, as it had not been renewed by affidavit as required by law. Unless the notice of the existence of this mortgage from Blinn to Graham was brought home to-him, he (Thorinly) was not bound by it, unless the notice to Sheldon can be imputed as notice to him. Here is the vital question in the case, and the authorities may, at first reading, seem to differ upon this point. Those holding that the as-signee of a mortgage takes it subject to-all equities existing against it are based upon cases of mortgages of realty or other liens, not being security for negotiable paper but being in the nature of choses *751 in action or nonnegotiable debts. English v. Waples, 13 Iowa, 57; Sims v. Hammond, 33 Iowa, 368; Bouligny v. Fortier, 17 La. Ann. 121; Schmidt v. Frey, 8 Rob. (La.) 435.
But where the mortgage is security for a debt, e.videnced by a negotiable promissory note, transferred before maturity, the rule is different. This distinction is recognized in Michigan, as a comparison of the following cases will disclose: Judge v. Vogel, 38 Mich. 568; Bloomer v. Henderson, 8 Mich. 395; Dutton v. Ives, 5 Mich. 515. A purchaser of a mortgage ought to inquire of the mortgagor if there be any reason why it should not be paid, but he should not be required to inquireof the whole world, to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage. Olds v. Cummings, 31 Ill. 188. It seems that the “subsequent purchaser” is only bound to inquire as to those matters that can be disclosed by the mortgagor or by the record. Any other rule would result in great hardship, and might work injustice. This question seems to be put at rest in the leading case of Carpenter v. Longan, 16 Wall. 271. Th'e authorities were reviewed there, including the very able case of Baily v. Smith, 14 Ohio St. 396, holding the opposite view. It was held in this case (Carpenter v. Longan, supra) that “the assignment of a note un-derdue raises the presumption of the want of notice, and this presumption stands until it is overcome by sufficient proof. The case is a different one from what it would be if the mortgage stood alone, or the note was nonnegotiable, or had been assigned after maturity. The question presented for our determination is whether an assignee, under the circumstances of this case, takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee. We hold the affirmative.” This ease is now followed by most of the courts, and seems to settle the law. Thorinly purchased the Blinn note of Sheldon before it was due, and was charged, therefore, with no equities existing against it at that time. He was charged with no equities existing against the mortgage securing this negotiable and underduenote, existing in favor of any third person, as against the assignor, not brought to his knowledge or notice either by the record or by actual or constructive notice. He was an innocent purchaser in good faith, bound only by the chattel mortgage record of the county where the property was situate, and where all of the parties to this suit resided. That record disclosed that a former mortgage on the same property had expired, without being renewed or kept alive as to parties other than the mortgagor and mortgagee, in which case it became void as to Thorinly, the purchaser, when he had no knowledge of its existence. To hold otherwise would be to hold against the weight of authority and the plain provisions of the chattel mortgage statute.
We do not determine in this case the question of the sufficiency of the notice to Sheldon of the validity and existence of the Graham mortgage, or the legal effect of such notice upon him, as it is unnecessary to do so. We hold that Thorinly, the purchaser of the negotiable note before its maturity, became the purchaser in good faith and for value of it, and the mortgage securing it, which is an incident of it and is inseparably connected with it, and was not charged with any of the equities existing between the original mortgagor and Graham, as he was an innocent, subsequent purchaser in good faith, and without notice of any prior existing lien upon the property. This action was brought for a determination of the priority of the liens of the two mortgages, and for a sale of the mortgaged chattels on execution, and the application of the proceeds to the satisfaction of the mortgage indebtedness due from defendant Blinn to plaintiff, as well as for judgment on the note. It seems that the judgment of the court below was correct in holding that the lien of the Sheldon mortgage, transferred to Thorinly, was superior to the lien of the Graham mortgage, but the Graham mortgage is still a subsisting lien, as between the parties, and plaintiff, Graham, clearly has a right to foreclose his mortgage and sell theproperty subject to the Sheldon mortgage. It is urged on behalf of defendants Sheldon and Thorinly that this is not a suit for foreclosure. We think it is. The word “foreclosure” is not used; but the prayer for judgment on the note, the sale of the mortgaged property on execution, and the application of the proceeds to the payment of the mortgage debt would seem to mean fully as much as to ask for a foreclosure of the mortgage. Besides, there is a prayer for general relief, and the stating part of the petition states sufficient to *753 authorize a foreclosure, and the evidence ■sustains the allegations of the petition in this respect. The judgment of the district cou.rt for Fremont county is reversed, and the cause remanded', with instructions to proceed in conformity to this opinion. Costs will be entered against the defendant Horace C. Blinn in this and in the district court.
Gkoesbeck, C. J., and Conaway, J., concur.