## FIRST NAT. BANK OF CHICAGO v. BAIRD.

(Circuit Court of Appeals, Eighth Circuit. November 29, 1905.)

No. 2,266.

1. CHATTEL MORTGAGES—TRANSFER—NECESSITY OF RECORDING ASSIGNMENT.

Rev. St. Wyo. 1899, § 2812, while it authorizes the recording of assignments of chattel mortgages, does not require it, in order to render a chattel mortgage valid in the hands of a transferee as against subsequent purchasers of the property from the mortgagor, nor affect the general rule that an indorsement before maturity of negotiable notes, secured by such a mortgage duly recorded, carries the mortgage with it, although no assignment is made.

2. SAME—DISCHARGE—PAYMENT TO MORTGAGEE AFTER TRANSFER OF NOTES.

Defendant purchased a large number of cattle, with knowledge that some of the same were subject to a mortgage executed by the seller to secure negotiable notes, and in accordance with the right given by the contract to pay the mortgage from the purchase money defendant, after the cattle were delivered, paid the amount thereof to the mortgagee and obtained releases from it. Prior to the sale the mortgagee had sold and indorsed the notes secured to plaintiff. *Held,* that such indorsement operated to transfer the mortgage, which could thereafter be released only by plaintiff, even though no assignment was taken or recorded, as might have been done under the statute, and that defendant was not protected by his payment to the mortgagee, which could not produce the notes and was not authorized by plaintiff to receive such payment.

In Error to the Circuit Court of the United States for the District of Wyoming.

Edgar M. Morsman, Jr. (C. W. Burdick, on the brief), for plaintiff in error.

John W. Lacey, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

CARLAND, District Judge. This action was commenced by the bank against Baird to recover damages for the conversion of 60 bulls and 550 two year old steers and spayed heifers. At the trial the following facts appeared. On March 21, 1903, one Henry N. Flato executed and delivered to the Flato Commission Company his two certain negotiable promissory notes, due October 21, 1903, for the sum of $10,000 and $13,186.72, respectively. On the same day, in order to secure the payment of said promissory notes, Flato executed and delivered to said Flato Commission Company a chattel mortgage which so far as is material to the questions raised on this writ of error, is in words and figures as follows:

"Know all men by these presents, that Henry N. Flato, of the county of Converse, state of Wyoming, party of the first part, in consideration of the sum of twenty-three thousand, one hundred and eighty-six and 72-100 dollars to him paid by the Flato Commission Company, a corporation, party of the second part, the receipt whereof is hereby acknowledged, has bargained, sold, assigned, and transferred, and by these presents does bargain, sell, assign and transfer, unto said party of the second part and its successors and assigns, all the following articles of personal property, situated in the county of Converse and state of Wyoming, to wit: Ten hundred and ninety

(1090) head of cattle 2 year old and upwards, average weight about ———— pounds, and worth $30,000.00 now. For further and better description said cattle are marked and branded with one or more of the marks and brands as follows, viz: 1,000 head of high-grade two year old steers and spayed heifers branded  *  *  *  on left side, 90 head of Hereford and Shorthorn bulls branded  *  *  *  or FT on left side—and it is the intention of the mortgagor by these presents to cover all the cattle of this description owned and controlled by him.  *  *  *  Provided, always, and these presents are upon this express condition, that if said party of the first part shall pay, or cause to be paid unto the said party of the second part, its successors or assigns, the commission heretofore stated and agreed upon, and the aforesaid sum of twenty-three thousand, one hundred and eighty-six and 72-100 dollars ($23,-186.72) according to the terms of two certain promissory notes of even date herewith, executed by Henry N. Flato to the order of the Flato Commission Company, and payable as follows: One note for $13,186.72, dated March 21st, 1903, payable Oct. 21st, 1903, after date. One note for $10,000.00 dated March 21st, 1903, payable Oct. 21st, 1903, after date.  *  *  *  All payable at the office of said the Flato Commission Company, So. Omaha, Neb., and all with interest thereon at the rate of 9 per cent per annum from maturity  *  *  * then these presents  *  *  *  shall be void."

A copy of said mortgage was duly filed for record in the office of the register of deeds for Converse counnty, Wyo., on March 27, 1903. On the 30th day of April, 1903, the Flato Commission Company duly indorsed, sold, and delivered, for value and before maturity, said promissory notes, together with said chattel mortgage, to the plaintiff bank, which has ever since remained the lawful owner and holder of the same, and no part of the amount due on said notes has been paid to said bank. On June 2, 1903, Henry N. Flato, the maker of said notes, made and entered into a written agreement with the defendant, Baird, which, so far as material, was in words and figures following:

"This agreement, made and entered into this 2d day of June, A. D. 1903, by and between Henry N. Flato of Douglas county, Wyoming, of the first part, and W. M. Baird, of Weston county, Wyoming, party of the second part, witnesseth: That for and in consideration of one dollar in hand paid, and other good and valuable considerations hereinafter named and set forth, the said party of the first part has this day sold and transferred to said party of the second part four thousand head of cattle, more or less, as said cattle are rounded up and found on the ranges in the state of Wyoming, all of said cattle being branded with one or more of the following brands:  *  *  *  Said brands being located on left side or hip, and also all cattle branded  *  *  * on left side and  *  *  *  on left shoulder. That all sucking calves are to be thrown in, and also all sucking calves branded since January 1st, 1903. That said cattle are to be delivered at '21' Ranch on Black Thunder Creek in Western county, Wyoming, during the seasons of 1903 and 1904, as they are rounded up by said party of the first part,  *  *  *  together with the party of the second part. That the said party of the second part shall pay said party of the first part the sum of $28.50 for each and every head of cattle delivered  *  *  *  by the said party of the first part in accordance with and under the terms of this agreement.  *  *  *  That said party of the second part is to place in escrow as part payment for the above described goods and chattels a good and sufficient deed in writing to 654 acres of land described as follows, to wit: Lots seven (7), nine (9), ten (10), eleven (11), twelve (12), thirteen (13), fourteen (14), fifteen (15), sixteen (16), seventeen (17), eighteen (18), nineteen (19), and twenty (20), in section one (1), township seventy-eight (78), of range thirty-two (32), and the west half of the southwest quarter of section six (6), township (78), range thirty-one (31), in Guthrie county, Iowa, containing 654 acres, which said land is valued at $33,200.00. That said deed is to be placed in escrow in the Union Stock Yards National Bank

of South Omaha, and to remain in escrow in said bank until sufficient cattle have been delivered under. this contract to pay for said land, and, when the mortgage upon the cattle so delivered has been released, then the said deed is to be delivered by said bank to said party of the first part or his repre-sentative. That the possession of the above described premises is to be de-livered to the party of the first part from and after this date; said party of the first part assuming full management of said premises from and after June 1st, 1903, and being responsible therefor. That after the above described land has been paid for as herein specified, and in accordance with the terms of this agreement, all cattle thereafter delivered and received by said party of the second part are to be paid for at the rate herein specified and agreed upon, and the money due therefor shall be deposited in the Union Stock Yards National Bank of South Omaha to be delivered to the Flato Commission Com-pany, when the said Flato Commission Company furnishes the proper releases of the mortgages held upon the cattle so delivered."

On July 4, 1903, Flato delivered part of the cattle described in said contract at the place designated therein and subsequently and prior to October 30, 1903, delivered the remainder. When the cattle were delivered at the ranch of defendant, Baird, they were branded "21" and turned loose on the range. T. B. McPherson was the cashier of the Stock Yards National Bank at South Omaha, Neb. James C. Dahlman was secretary and manager of the Flato Commission Company, also of South Omaha. The Stock Yards National Bank and Flato Commission Company occupied the same build-ing. Henry N. Flato had no interest in the Flato Commission Company. When cattle were delivered by Flato at Baird's ranch under the contract, Baird gave Flato a receipt for the same and Flato sent the receipt to Dahlman. Dahlman would then take the receipt to McPherson, and McPherson, upon receiving a release of the cattle from Dahlman of the Flato mortgage, would give Dahlman a check for the cattle; the check being signed "Baird, by McPherson." During all the time of these payments by McPherson for cattle delivered by Flato to Baird the Flato Commission Company was largely in-debted to the Stock Yards National Bank. The transaction between Flato and Baird was closed satisfactorily so far as appears. Baird paid for all the cattle received from Flato at the contract price. The plaintiff bank, before commencement of this action, claiming to be the owner and entitled to the possession thereof by virtue of a special property therein under the chattel mortgage given by Flato to the Flato Commission Company, demanded from Baird the possession of the cattle covered by the mortgage, which demand was refused. Evi-dence was also introduced tending to show that Baird had received by purchase from Flato the cattle, or some of them, covered by the chattel mortgage and also the value of the same. No assignment of the mortgage was ever filed or recorded in the office of the register of deeds of Converse county, Wyo. Baird had actual knowledge of the mortgage when he purchased the cattle but no knowledge of the assignment to plaintiff bank. There was no evidence that would warrant a finding by court or jury that plaintiff bank knew of or au-thorized the sale of the cattle by Flato to Baird. At the close of all the testimony the trial court charged the jury, and the following portions of the charge, among others, were duly excepted to.

"(1) It is conceded by all that no assignment of this mortgage to this plaintiff was ever recorded, and it was suggested by counsel at the argument that no assignment of the mortgage was ever taken; that the notes were transferred and the transfer of the notes carried with it the transfer of the this case, that would not relieve the plaintiff from the necessity of obtaining and filing an assignment or some notice of record, so that innocent purchasers might be protected, under the statutes of this state. (2) The statutes of Wyoming provide for recording in the county clerk's office assignments of chattel mortgages. This is for the purpose of giving notice of the rights of the assigns to persons dealing with the property. In this case the plaintiff bank failed to record any assignment of the mortgage and thereby failed to use one of the recognized methods of protecting its rights. Now a notice filed of record in this case would have protected both Mr. Baird and this bank. If, under these circumstances, the defendant made all reasonable investigations and inquiries as to the ownership of the mortgage, and that he must do, and upon the information so obtained in good faith purchased the cattle in controversy, paying full value therefor, upon the faith of the release of the mortgage executed by the Flato Commission Company, the apparent owner of the mortgage, and without any knowledge on his part—that is, on the part of the defendant, Baird—then you are authorized to find for the defendant. (3) I do not think that the plaintiff, under our recording acts, can escape its duty to file notice, to protect innocent purchasers, of the transfer of the mortgage by simply saying, as counsel has in argument, that we took no assignment, but the transfer of the notes carried with it the mortgage. While that is true, the recording act. as I understand it, requires an assignment to be recorded, but even if the court is in error about that, it is certainly authorized and I think, if that be the case, it is all sufficient. In other words, I think parties purchasing paper of this character are bound to comply with the recording acts for the purpose of protecting innocent purchasers. (4) The testimony in this case shows, and I think there is no conflict, that Mr. Baird paid for these cattle, and there is no controversy but that the bank purchased these notes mentioned in the mortgage, which mortgage secured the notes, but where one of two innocent parties must suffer, the one, if one is shown to be negligent, is the one who must suffer  Now, in this case, as I said to you a moment ago, if this bank had filed a notice of record by way of an assignment, or otherwise, which I think it was its duty to do, both the bank and Mr. Baird would have been protected in this transaction."

In relation to the matters referred to in the above excerpts from the court's charge, counsel for plaintiff bank requested the court to charge the jury as follows:

"(1) The jury are instructed that payment by Baird to the Flato Commission Company and the purported execution by the Flato Commission Company of the releases for the bulls and two year old steers and spayed heifers do not constitute a valid discharge of the lien of plaintiff's mortgage upon said cattle."

Which request was by the court refused and an exception taken. Counsel for plaintiff bank also requested the court to charge the jury as follows:

"(2) The jury are instructed that the evidence fails to show that either Dahlman or the Flato Commission Company were the agents of the plaintiff either in making the sale to Baird or in receiving payment for the cattle, and the acts of said Dahlman and the said Flato Commission Company are not binding on the plaintiff."

Which said request was by the court refused and an exception taken. In lieu thereof, the trial court of its own motion charged the jury as follows:

141 F.—55

"(3) There is some testimony in the case tending to show that Mr. Dahlman figured in the matter of this sale of these cattle to the defendant, and as there is some controversy between counsel and perhaps some conflict in the evidence as to the extent of his authority, I give you this rule in relation to that: If you find from the evidence that the plaintiff bank authorized Mr. Dahlman, the secretary of the Flato Commission Company, to dispose of the cattle in controversy, and that Mr. Dahlman thereafter joined in the sale of the cattle to the defendant, Mr. Baird; and that before the purchase was completed gave notice of the trade to the plaintiff bank, and that notwithstanding these things the plaintiff bank took no steps to inform intending purchasers of its rights in the mortgage, and if you further find from the evidence that under these circumstances that the defendant Baird purchased the property in good faith, paying full value therefor, relying upon the release of the mortgage by the Flato Commission Company, the apparent owner of the mortgage, with no knowledge whatever of any rights therein in the plaintiff bank, then you will find for the defendant. And if you find from the evidence that Mr. Dahlman was authorized by the bank to dispose of the cattle in controversy and was also authorized to release the mortgage in controversy, and that Mr. Dahlman, while so authorized and acting for the bank and the Flato Commission Company joined in making the sale of the cattle to the defendant Baird, and if you further find that the defendant Mr. Baird purchased the cattle in good faith, paying full value therefor upon the faith of a release of the mortgage of the Flato Commission Company and without knowledge of the rights of the plaintiff bank, your finding should be for the defendant."

Although the case was in form submitted to the jury the practical effect of the court's charge was to direct a verdict for the defendant, and if the court's view of the law was correct a direction in favor of the defendant was justified. As the case stood at the close of the testimony the plaintiff bank was entitled to go to the jury on the question as to how many cattle Baird had converted and the value thereof, or the defendant Baird was entitled to a directed verdict in his favor. A strong and persuasive argument is made by counsel for defendant Baird on the theory that Baird was a purchaser of the cattle from Flato in good faith relying upon the release of the chattel mortgage obtained from the Flato Commission Company. The evidence introduced at the trial shows a very different case than the one argued by counsel for defendant so far as this feature of the case is concerned. The evidence shows without contradiction that Baird, or McPherson, who acted for him, never received a release of any kind until after every head of cattle described in any release had been delivered to Baird at his ranch. The language of the contract of June 21, 1903, between Flato and Baird declared "that said party of the first part has this day sold and transferred to said party of the second part."

If the contract itself did not constitute a completed sale as between the parties thereto, then all that was necessary was a delivery of the cattle under contract, and delivery of the cattle thereunder was made before any release of the chattel mortgage was in existence, so that to say that Baird purchased on the faith of the release is not in accordance with the evidence. The sale and purchase of the cattle was one thing, the payment for the same quite another. Baird knew of the mortgage when he purchased the cattle. He recognized it as a valid and existing lien. He had provisions inserted in the contract which would permit him to pay the mortgage and have the payment deducted from the amount coming to Flato. After the cattle had been

sold and delivered to Baird he would not pay the purchase price until he had a release of the mortgage. This was not buying on the faith of the release, it was directly the contrary. He did not trust any one to pay the mortgage except himself, and he paid the money due thereon to the original payee of the notes without the production of the notes and mortgage and, so far as the record shows, without even asking for them. This in the face of the fact that the notes as described in the mortgage, which mortgage Baird had seen was payable to the Flato Commission Company, its successors or assigns. It thus appears that Baird before and after he had purchased the cattle, and after they had been delivered to him, knew of the Flato Commission mortgage, knew that it had not been paid or discharged, knew of this before he paid a dollar of the purchase price and with the world open to him as a field of inquiry, he paid the money to one who was not the owner and holder of the notes and mortgage, and could not produce the same. It is not disputed but that the indorsement and delivery of the Flato notes to the plaintiff bank constituted in law an assignment of the mortgage securing the same. Therefore the payment of the amount due thereon to the Flato Commission Company did not discharge the lien of the mortgage, unless there is something in the statutes of Wyoming which renders the assignment of the mortgage to the plaintiff bank void as against Baird.

It is claimed by counsel for Baird that the laws of Wyoming rendered the assignment of the mortgage to plaintiff bank void as against Baird, for the reason that said assignment was not recorded in the office of the register of deeds of Converse county, Wyo., or that said laws furnished an opportunity for recording the assignment of the mortgage and the bank having failed to have the same recorded was guilty of negligence which will defeat a recovery in this action. The statutes of Wyoming (Rev. St. 1899) bearing upon the subject are as follows:

"Sec. 2811. Every mortgage, bond, conveyance or other instrument intended to operate as a mortgage of goods, chattels or personal property which shall not be accompanied by immediate delivery and be followed by an actual and a continued change of possession of the goods, chattels and personal property so mortgaged shall be absolutely void as against the creditors of the mortgagor, and as against subsequent mortgagees or purchasers in good faith, unless said mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage shall be filed as hereinafter provided.

"Sec. 2812. Every such mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage shall be filed in the office of the county clerk where the property is, and shall be indexed by the clerk of said county in a book to be kept by such clerk to be called the 'Chattel Mortgage Index.' Upon the filing of such mortgage, conveyance or other instruments intended to operate as a chattel mortgage, the county clerk shall enter in said index the name of the mortgagor, the name of the mortgagee in alphabetical order, the date of said instrument, the day and hour of filing, the amount for which it is security, and the date of the maturity of said mortgage, together with a brief description or reference to mortgaged property, and upon the release, discharge and assignment thereof, he shall enter in suitable columns opposite the original entry of filing, the date of said assignment, the date of the filing of said assignment, and the assignee thereof, or in case of the release of said instrument, the date of said discharge, satisfaction or release, and by whom released, satisfied or discharged. The release,

satisfaction, discharge or assignment of the chattel mortgage may be endorsed upon the original instrument on file in the clerk's office, or by an instrument of release and discharge or assignment executed .and acknowledged in the manner provided for a chattel mortgage, which shall be filed with, and by the clerk be attached to the original instrument in his office. For filing and indexing a chattel mortgage the county clerk shall collect and pay into the county treasury a fee of twenty-five cents to be paid by the party requesting the filing of such instrument, and for each assignment, release or discharge, the county clerk shall collect and pay into the county treasury a fee of fifteen cents, to be paid by the party requesting such service."

It would extend this opinion to an unwarrantable length to review all the decisions of the courts bearing upon the questions raised by the instructions of the court given and those requested by counsel for defendant Baird and by the court refused. Speaking without reference to the statutes of Wyoming, it may be stated that it is now the settled law in this court that the indorsement of the two negotiable promissory notes before maturity to the plaintiff bank carried with them the chattel mortgage executed as security therefor, and that plaintiff bank alone could thereafter discharge the mortgage lien. That the payment of the mortgage debt by Baird under the circumstances detailed in the evidence in this case is not sufficient to protect Baird as against the lien of the mortgage which passed to plaintiff bank prior to such payment. Swift v. Bank of Washington, 114 Fed. 643, 52 C. C. A. 339; City National Bank v. Goodloe, McClellan Co., 93 Mo. App. 125; State National Bank v. Cudahy Packing Co. (C. C.) 126 Fed. 543; Cudahy Packing Co. v. State National Bank, 134 Fed. 538, 67 C. C. A. 662; First National Bank v. National Live Stock Bank (Okl.) 76 Pac. 130; Kerfoot v. State Bank of Waterloo (Okl.) 77 Pac. 46; Martindale v. Burch, 57 Iowa, 291, 10 N. W. 670; Tilden v. Stilson, 49 Neb. 384, 68 N. W. 478; Eggert v. Beyer, 43 Neb. 711, 62 N. W. 57; Weldon v. Tollman, 67 Fed. 986, 15 C. C. A. 138; Mary Leahy et al. v. Jesse Haworth, Executor, etc. (decided by this court November 7, 1905) 141 Fed. 850.

We have carefully examined the authorities cited by counsel for defendant, and find them all arising under statutes regulating the recording of instruments relating to real estate, where said statutes declared void conveyances and assignments as against purchasers or incumbrancers in good faith, or under a state of facts which would not make the equitable doctrines therein referred to applicable to the case at bar. The statutes of Wyoming heretofore quoted do not require an assignment of a chattel mortgage to be recorded, in order that it may be valid as against subsequent purchasers or incumbrancers, so the assignment of the Flato mortgage was not rendered void by those statutes for want of record. See Graham v. Blinn, 3 Wyo. 746, 30 Pac. 446. In the case referred to the Supreme Court of Wyoming used the following language:

"There was no written assignment of this mortgage, but that was not necessary. Our law on chattel mortgages does not require this, although it makes provision for a record of such assignments."

It is claimed, however, that the statutes of Wyoming afford an opportunity of recording assignments of chattel mortgages and that because the plaintiff bank did not procure a written assignment of the

Flato mortgage and have it recorded, it was guilty of such negligence as would defeat its lien on the cattle purchased by Baird. If the statute did not require the assignment to be recorded, then the recording of the same would not have been constructive notice to any one. Negligence only arises from the violation of some legal duty owing by one individual to another. Let us then inquire as to what legal duty the plaintiff bank owed to purchasers of the Flato cattle. The plaintiff bank was the owner and holder of the Flato notes and mortgage. The mortgage was duly recorded. No person could purchase the cattle without actual or constructive notice of the mortgage. There was, therefore, no duty resting on the plaintiff bank to notify any one of the mortgage. Was there any legal duty resting upon it to notify any one that it owned the debt secured thereby? We think not. We think the plaintiff bank had the right to rely upon the fact that all persons purchasing the cattle with knowledge of the mortgage, with knowledge that the notes were negotiable, with knowledge derived from the face of the mortgage that the debt thereby secured was payable to the Flato Commission Company, its successors or assigns, were bound to use ordinary care to see that the person to whom the debt was paid was the owner and holder of the notes. Especially when this fact could be ascertained by simply asking the person who was about to receive payment to produce the evidence of the indebtedness. Any other view would greatly impede the circulation of negotiable paper and largely destroy its value. We have carefully examined the evidence in the record upon the question as to whether the plaintiff bank ever knew of or authorized the sale of the cattle by Flato to Baird, or whether it ever authorized the Flato Commission Company to receive payment of the notes, and we can find no competent evidence upon which the jury would be authorized to find in the affirmative on the propositions stated. We therefore are of the opinion that the trial court erred in charging the jury as it did in the excerpts quoted in this opinion and also erred in refusing to charge as requested by counsel for plaintiff bank.

The judgment, therefore, of the trial court must be reversed, and a new trial ordered.