### ELLA M. MOORE *vs.* HORACE G. NORMAN.

#### June 9, 1890.

**Chattel Mortgage—Tender after Maturity—Discharge of Lien.**—Tender of the amount due upon a promissory note secured by a chattel mortgage, though made after the note has matured, extinguishes and discharges the lien of the mortgage.

**Same—Tender not Kept Good.**—It is not necessary to keep the tender good by bringing the money into court in case an action is thereafter brought by the mortgagee to obtain possession of the chattels.

**Same—Proof Requisite.**—In such a case, however, the proof should be clear that the tender was fairly made, and deliberately and intentionally

refused by the mortgagee; that sufficient opportunity was afforded for the latter to ascertain the amount due; and that a sum sufficient to cover the whole amount due was absolutely and unconditionally tendered.

Action brought in the district court for Jackson county, to recover possession of certain described cattle of the value of $230, claimed by plaintiff as purchaser at sales on two chattel mortgages executed to him by defendant. Defence, usury in one of the mortgages, and tender, before sale, of the amount due on both mortgages. At the trial, before *Perkins*, J., the plaintiff had a verdict for recovery of all the cattle except three calves, which the jury found the defendant was entitled to. A new trial was refused, and the defendant appealed.

*Geo. W. Wilson*, for appellant.

*T. J. Knox*, for respondent.

COLLINS, J. Action of claim and delivery, brought by a mortgagee against a mortgagor, to recover possession of certain domestic animals. Mortgages had been given upon distinct property to secure separate notes. By the verdict of the jury the animals described in one of these mortgages were awarded to plaintiff, while those covered by the other were held to belong to defendant. Under the charge of the court, this conclusion must have been reached by determining that one of the notes was tainted with usury, and hence the mortgage securing it invalid, while the other was not. By this charge there was excluded from the consideration of the jury all testimony in reference to tenders made by the defendant mortgagor after he had defaulted in his payments, and just prior to the commencement of this action. In substance, this testimony was that defendant, in due form, had twice tendered to plaintiff in payment of his notes a sum of money differing in amount each time, and that on each occasion the tender had been rejected; and that he had thereafter retained the money so tendered in his possession, ready for the plaintiff should it be called for, until after the property in dispute had been sold upon a foreclosure of the mortgages. The fact of these tenders, and the amount of each, seems undisputed; the real difference between the parties being as to the balance then remaining due and unpaid upon the defendant's notes. The sole reason given by plaintiff for refusing to accept the money offered by defendant was that it was insufficient.

in amount.    The defendant in his answer averred a readiness to pay
the balance which he admitted and alleged to be due on his notes,
and averred, further, that he brought this sum into court for plaintiff,
but there was no actual deposit or offer to deposit the amount in court.
Upon the other hand the testimony, as before stated, showed that the
money was kept by defendant but a few days, until the property was
sold on foreclosure.    The position of the court below, taken upon the
trial, and also when it refused to allow the motion appealed from, was
that the defendant should have kept his tender good by bringing the
money into court for payment to the plaintiff, should it have been de-
termined by the jury that it was sufficient in amount.

The question before us—the effect of a tender made subsequent to de-
fault in the conditions of a mortgage—has never been presented to this
court.  In *Balme* v. *Wambaugh*, 16 Minn. 106, (116,) it was assumed, ex-
pressly for the purposes of a consideration of that case, that a suffi-
cient tender of the debt on the law-day, and a refusal to accept, dis-
charged the lien of a mortgage upon real property, although the ten-
der was not kept good.    The subject of tender, in case of a debt
secured by chattel mortgage, was also referred to in *Coffin* v. *Reynolds*,
21 Minn. 456 ;  *Ferguson* v. *Hogan*, 25 Minn. 135 ;  *Norton* v. *Baxter*,
41 Minn. 146, (42 N. W. Rep. 865;)  *Reisan* v. *Mott*, 42 Minn. 49,
(43 N. W. Rep. 691.)    But the necessity of keeping the tender good
by payment of the money into court when the mortgagee, refusing,
after condition broken, to accept it, commences a possessory action
for the mortgaged property, is now the question to be determined.

At common law, where it was held that a mortgage upon real prop-
erty was a grant of the land, defeasible only on the condition subse-
quent of paying the money at the exact time specified, (on the "law-
day," as it was then termed,) it was well settled that a tender and re-
fusal upon the law-day extinguished the lien of the mortgage, although
the debt remained.    But in case the money was not tendered when
due, upon the exact day, the estate vested absolutely in the mort-
gagee.    Even payment and acceptance thereafter did not revest the
estate in the mortgagor without a reconveyance from the mortgagee.
In case of a tender and refusal after maturity of the debt, the lien
was not extinguished, nor the character of the mortgagee's estate

changed. The mortgagor's only remedy was in equity, by a bill to redeem. It was settled at an early day in the state of New York, in opposition to the ancient doctrine, that a mortgage upon real property was a mere security or pledge of the land covered by it for the money borrowed or mentioned in it; that the mortgagor remained the owner of the estate, entitled to its possession until divested by foreclosure; and that an acceptance of the amount due on the mortgage, at any time prior to a foreclosure, discharged the incumbrance on the land, precisely as an acceptance of the amount for which personal property was held discharged the pledge. With this view of the law in regard to real-estate mortgages, came the contention that no sound distinction could longer be maintained between a tender and refusal upon the due or law day, and a tender and refusal upon any day thereafter, prior to foreclosure; and in *Kortright* v. *Cady*, 21 N. Y. 343, it was held that a tender of the money due on a real-property mortgage, at any time before foreclosure,—though made after the law-day, and not kept good,—extinguished and discharged the mortgage lien. This doctrine in regard to real-property mortgages has been steadily adhered to in the state of New York, and with the common law correctly stated, as it has been, in respect to the sweeping effect of a tender made upon due-day, it is difficult to see what distinction can now be suggested, when considering the force and effect of a tender made upon the law-day and one made thereafter. We are positive none can be pointed out which possesses any real merit. And the doctrine announced in the *Kortright Case* has been adopted elsewhere, without regard to the character of the security, whether real or personal. *Flanders* v. *Chamberlain*, 24 Mich. 305; *Bartel* v. *Lope*, 6 Or. 321. But in *Noyes* v. *Wyckoff*, 30 Hun, 466, it was held inapplicable in the case of a chattel mortgage because of the difference in structure and effect between such a security and a mortgage upon real estate; the latter being a lien only, and conveying no title to the land, while the former transferred the title at once, subject to a defeasance by performance of the conditions annexed, the payment of the debt. On appeal, this case was affirmed on another point. 114 N. Y. 204, (21 N. E. Rep. 158.)

The character of the real-estate mortgage, and the *status* of the

lands covered thereby, are the same in this state under our statutes as they were declared to be by the courts of New York many years ago, while the same distinction between chattel mortgages and those upon real property exists here as it does there; for it has been announced repeatedly in the decisions of this court that the former vests in the mortgagee a defeasible title in the mortgaged property, and upon default he is entitled to possession without foreclosure; unless stipulated to the contrary, subject to the mortgagor's right of redemption.    There has been of late years considerable legislation upon the subject of chattel mortgages, with a view to guarding and protecting the rights and interests of the mortgagor.    Although technically the legal title to the mortgaged property is vested in the mortgagee, he has been deprived of many of the rights which formerly resulted from that rule of law.    He cannot arbitrarily and unreasonably take possession of the chattels prior to the time the mortgagor is in default in his payments.    Unless power to sell is granted by the mortgage, a foreclosure thereof must be made by service of a notice of intent to foreclose, the foreclosure becoming complete at the expiration of 60 days, and, pending these proceedings, it does not seem to be absolutely essential that possession should be taken by the mortgagee.    If by the terms of the mortgage a sale be authorized as a method of foreclosure, it must be public and after due notice as prescribed by the statute.    Until the foreclosure is complete, either by service of the notice of intention to foreclose and the expiration of the period of 60 days thereafter, or by a public sale of the property under the terms of the mortgage, the right to redeem is fully recognized and protected.    If the mortgagee has reduced the possession to himself, a tender before actual sale, and a refusal to accept the amount due, with costs, if any there be, confers upon the mortgagor the right to maintain replevin or claim and delivery for the property.    Now, all of these salutary provisions of the statutes (Gen. St. 1878, c. 39; Laws 1879, c. 65; Laws 1885, c. 171,) have had a practical effect upon the rule of law that the legal title to the mortgaged chattels vests in the mortgagee, and that he is entitled to possession thereof upon default of the annexed conditions.    It still exists, and for obvious reasons, not apparent in cases where real

property has been mortgaged, will continue to exist. But in truth very little difference can be pointed out between the rights, privileges, and remedies of the mortgagor of real and personal property, either in the structure of the mortgage or its effect. As against third parties, one must be filed, the other put upon record; as to either, redemption may be made after default, upon payment of the debt secured thereby within a specified interval of time, denominated, in each case, a "period for redemption." The same kind of an instrument, a certificate in writing, (executed with more formality in case the security is upon real than if it be upon personal property,) releases and discharges either. The distinction is therefore more in theory than in practice. . If this be so, why should a different effect be given a tender made of the amount of a debt in the one case than in the other? We can discover no reason for a distinction which commends itself, and no reason is suggested in the decisions cited by respondent, except that based upon the technicality before referred to, that a mortgage upon real estate is a mere lien, while a mortgage on personal property vests the legal title thereof in the mortgagee. This is not satisfactory, and, in analogy with the rule laid down in case of real-estate security, which is well supported on principle and by authority, we are of the opinion that the effect of a tender of the amount of a debt secured by a chattel mortgage, though made after maturity, is to extinguish and discharge the lien, the debt only remaining; and that it is not necessary to keep the tender good by depositing the money in court, in case an action is thereafter brought by the mortgagee to obtain possession of the chattels.

It is urged in some of the cases, where a different conclusion has been reached, that the adoption of this rule must work great hardship and injustice to the mortgagee, frequently causing a loss of the entire debt; but certainly, in this respect, the rule will not be more unjust when invoked as to chattel than when governing a real-property mortgage, or than when it is applied, as it always has been without hesitation, in the case of a pledge. See *Norton* v. *Baxter, supra,* and cases cited. As was said in the *Kortright Case,* it is not perceived how the mortgagee is to be embarrassed by the establishment of this rule. If the mortgagor does not tender the full amount due,

v.43m.—28

the lien of the mortgage is not extinguished, and he runs no risk in accepting it. If, upon the other hand, it is sufficient in amount, his debt is paid, and that is all he has any right to demand. It is his own folly if he attempts to exact more. But, in view of the serious consequences which might possibly result from a refusal to accept such a tender, the proof should be clear that it was fairly made, deliberately and intentionally refused by the mortgagee, that sufficient opportunity was afforded to ascertain the amount due, and that a sum sufficient to cover the whole amount due was absolutely and unconditionally tendered. *Tuthill* v. *Morris*, 81 N. Y. 94. See, also, upon the sufficiency of a tender, *Storey* v. *Krewson*, 55 Ind. 397; *Wilder* v. *Seelye*, 8 Barb. 408; *Ocean Nat. Bank* v. *Fant*, 50 N. Y. 474; *Nelson* v. *Robson*, 17 Minn. 260, (284.) As the character of the tender, whether conditional or otherwise, and its sufficiency as to amount, should have been submitted to the jury, under proper instructions, the trial court erred in its ruling, and a new trial must be had.

Order reversed.