BLYTH & FARGO COMPANY, a Corporation, Respondent, v. JULIAN C. HOUTZ, R. M. FORNCROOK, GEORGE N. MILES and CHARLES RATHBUN, Appellants.

### No. 1314. (66 Pac. 611.)

Chattel Mortgages: Title: Sale of Mortgaged Property: Warranties: Liability of Mortgagee.

Under Revised Statutes, Wyoming, sections 2807, 2818, 2819, 2826, 2827, requiring foreclosure of a chattel mortgage in order to extinguish the equity of redemption, authorizing the insertion of permission for the mortgagor to retain possession of the property, and providing that no instrument shall operate as a chattel mortgage unless it shall state definitely that it is intended for security, a mortgage executed in the State does not pass title to the mortgagee, but is merely an incident to the debt secured; and where a mortgagor in possession sold property under an agreement that the proceeds should be paid to the mortgagee, and the mortgage released, such sale was not as the agent of the mortgagee, but by the mortgagor as owner, and the mortgagee was not bound by warranties made by the mortgagor.

Blyth & Fargo Co. v. Houtz et al.

(Decided November 23, 1901.)

Appeal from the Third District Court, Salt Lake County.—
*Hon. C. W. Morse,* Judge.

Action on a promissory note. From a judgment in favor
of the plaintiff company, the defendants appealed.

AFFIRMED.

*Lindsay R. Rogers, Esq.,* and *William D. Riter, Esq.,*
for appellants.

The mortgagor was an agent of the mortgagee in this
transaction.

This agency was one which vested an authority coupled
with an interest. The proceeds of the sale were to be paid
to the mortgagee, that is, the sale was made for the benefit
of the mortgagee. Innumerable authorities can be found to
substantiate the position of the appellants. That position,
briefly stated, is as follows: Wherever a mortgagor sells prop-
erty by virtue of a power of sale given in the mortgage by the
mortgagee, or by virtue of either written or oral consent of his
mortgagee, with the understanding that the proceeds derived
from such a sale are to be applied in satisfaction of the mort-
gage debt, then he is acting not as owner, not for himself, but
as an agent of the mortgagee. Conklin v. Shelly, 28 N. Y.
360; Brackett v. Harvey, 91 N. Y. 214; Southard v. Benner,
72 N. Y. 424; Robinson v. Elliott, 22 Wallace 524.

Let us inquire whether the mortgagor, acting as agent of
the mortgagee, had implied authority to warrant the condi-
tion and quality of this plant. The power conferred upon
the mortgagor had but one limitation which came to the notice
of the vendees. He was not to receive the proceeds of the
sale. It is an elemental rule that an agent's power can not

be limited by any secret instructions. The authorities hold that under these circumstances an agent, the mortgagor in this case, has implied authority to make a warranty as to the condition and quality of the property. See Mechem on Agency, sec. 349; Talmage v. Bierhause, 2 N. W. Rep. 716.

*Messrs. Dey & Street* and *W. H. Bramel, Esq.,* for respondent.

The first noticeable feature is that the defendants, knowing all the facts in the case, knowing of the mortgage and knowing of the relations between Shurtliff and the Blyth & Fargo Company, should have made their contract of purchase with Shurtliff in his own name and without mentioning the name of a principal if they deemed him an agent. If defendants deemed Shurtliff an agent, and wished to bind his principal, they knowing all the facts, should have made the contract in the name of the principal, but not having done this they are conclusively presumed to have dealt with Shurtliff alone. Ferguson v. McBean, 91 Cal. 63.

Agency, except in a few extraordinary situations far from the case at bar, is a relation which is created only by the consent, either express or implied, of the parties thereto. Before the relation can be said to exist there must be either an express agreement declaring and defining it or there must be a state of facts or course of dealings surrounding the parties from which it may be inferred that they have consented to and created their relation. Mechem on Agency, p. 1; 1 Am. and Eng. Ency. Law (2 Ed.), p. 937, and notes.

The cases cited by appellants to the effect that the mortgagor, selling mortgaged property, is the agent of the mortgagee, rest upon principles in nowise involved in this case. They all involve questions of accounting between mortgagor and mortgagee. They are all cases where the mortgagee, by express agreement, placed the mortgagor in possession for the purpose of selling the property, authorized him to receive the proceeds and intrusted him with the accounting.

It has been shown that Shurtliff was selling his own property and was not agent for anybody. Such being the fact, it was no part of plaintiff's business to make any warranties or representations concerning the same, and Mr. Fargo could not and did not represent plaintiff in his alleged conversation with defendants. If any such a conversation was held, Mr. Fargo was acting individually therein, and not as agent for anybody. It is nowhere shown that he was authorized to warrant another man's property.

But aside from this consideration, even for the moment considering him as agent of plaintiff in this respect, which he was not, his representations would not constitute a warranty. A warranty is a part of a contract entered into by a vendor, and inasmuch as plaintiff was not a vendor it can not be held upon any warranty. 28 Ency. Law, p. 728, and notes; Benjamin, Sales (6 Ed.), secs. 610, 645; Jones Chattel Mortgages (4 Ed.), sec. 819.

MINER, C. J.—In December, 1897, H. C. Shurtliff, Sr., and H. C. Shurtliff, Jr., being indebted to the Blyth & Fargo Company in the sum of $10,000, gave the latter a chattel mortgage upon their sheep-shearing plant, situated near Hilliard, Wyoming, and other property, to secure its payment. The mortgage contained the following clause: "Permission is hereby given to said parties of the first part to use, handle, operate, manage, and control the above-described property, and to market, sell and dispose of portions thereof as may be necessary in the course of business, or to preserve and care for the same, and to replace such property or parts sold with other property of like kind and character, which shall be subject to the operation and effect of this mortgage: provided, that the proceeds of such sale or sales shall be applied as and toward the payment of the debt secured by this mortgage; and provided, further, such sale or sales shall not be

24 Utah—5

made except with the consent in writing of the said party of the second part." The mortgage also contained a power of sale in case of default, and allowed the mortgagor to retain possession of the mortgaged property until default in payment. Upon default the mortgagee was entitled to take possession. It was further provided that the mortgage was intended as security for the payment of the debt named therein. In December, 1899, the defendants entered into negotiations with Shurtliff and the Blyth & Fargo Company for the purpose of purchasing the sheep-shearing plant, and in securing a release of the mortgage thereon. The effect of the arrangements made between them was that the mortgagee, Blyth & Fargo Company, gave Shurtliff, the mortgagor, permission to sell, so far as the mortgage was concerned, the sheep-shearing plant to the defendants, with the understanding that the proceeds thereof should be applied to the Shurtliff indebtedness to Blyth & Fargo Company's mortgage. To do this, it was arranged between the defendants and Shurtliff that the defendants should buy the plant, give their notes to Blyth & Fargo Company for $2,600, the agreed value of the sheep-shearing plant, and that such amount should be credited by Blyth & Fargo Company upon the mortgage debt against Shurtliff, and that the company in turn should release the mortgage upon the property. Shurtliff sold the machines to the defendants, and the note in question was delivered to the Blyth & Fargo Company by Shurtliff. The Blyth & Fargo Company then released the shearing plant from the mortgage. On maturity of the note the plaintiff, the Blyth & Fargo Company, brought suit thereon. The defendants interposed the defense: That the notes in question were given to the Blyth & Fargo Company in payment of the purchase price of the sheep-shearing plant owned by plaintiff and Shurtliff, and that such property was sold upon the express warranty and agreement that the same consisted of fifty Woolsey sheep-shearing machines, together with all necessary attachments; also two engines and boilers,

with attachments, sufficient to run the machines during 1899. That the plant was in good running order, whereas only thirty-eight machines were furnished, which were out of order, and were without appliances to run them. The engines and boilers were out of repair, and were not as represented, whereby great loss and damage was suffered by the defendants. The court directed a verdict for the plaintiff, and from the judgment the defendants appealed.

The able counsel for the appellants take the position— first, that under the statutes of Wyoming the mortgagee was the owner of the property mortgaged, as at common law; second, that whenever a mortgagor sells property by virtue of a power of sale given in the mortgage by the mortgagee, or by virtue of either written or oral consent of the mortgagee, with the understanding that the proceeds derived from such sale are to be applied to the satisfaction of the mortgage debt, then he is acting not as the owner, nor for himself, but as agent of the mortgagee. Under this claim it becomes necessary to determine what a chattel mortgage is under the Wyoming statute, and whether the title to the property is vested thereunder in the mortgagor or mortgagee. A chattel mortgage is an instrument of sale conveying title in the property to the mortgagee, with terms of defeasance; and, if the terms of redemption are not complied with, then at common law the title becomes absolute in the mortgagee. In other words, it is a conveyance of title upon condition, and it becomes an absolute interest at common law if not redeemed by the time stipulated, and the mortgagee is vested with the ownership of the property. 1 Cobbey, Chat. Mortg., sec. 4. The harsh rule concerning this class of securities prevailing at common law has been greatly modified by statutes in several of the States in recent years, so that the mortgage is considered and treated as a security for the payment of the debt, and the right or equity of redemption in the mortgagor can not be defeated in the property until after foreclosure and sale in conformity to the statute.

The obligation in question was made under the statute of Wyoming, and must be governed by the laws of that State. As we have seen, by common law the defeasible title is vested in the mortgagee. This common-law rule, with certain modifications, prevails in New York, Minnesota, and several other states. Gates v. Smith, 2 Minn. 30 (2 Gil. 21); Mann v. Flower, 25 Minn. 500; Galen v. Brown, 22 N. Y. 37. But the Code of Wyoming has made a change in this rule, and the rights of the parties therein, as well as of the public, are modified and defined. Section 2827, Revised Statutes Wyoming, provides that a foreclosure shall extinguish the equity of redemption of the mortgagor. Section 2819 requires a foreclosure of the mortgage. By section 2826 permission is given to the mortgagee to purchase the property at the sale and become the owner. Section 2818 authorizes the parties to insert in the mortgage permission for the mortgagor to hold, manage, possess, control, or sell the mortgaged property, and in case of sale the proceeds to be paid to the mortgagee, unless otherwise provided. Section 2807 provides that no instrument shall operate as a chattel mortgage unless it shall state definitely upon its face that it is intended for security, and shall also state the amount for which such instrument is security. The Supreme Court of Wyoming holds that a mortgage given to secure the payment of a note is an incident to the debt secured; that the assignment of the note carries with it the mortgage that secures its payment. Graham v. Blinn, 3 Wyo. 746, 30 Pac. 446. Under these provisions of the statute, an instrument does not amount to a chattel mortgage unless it appears upon its face that it is intended to secure the payment of a debt. It is then only an instrument to secure the payment of a debt. The mortgagor is allowed to remain in possession and manage and sell the property in accordance with the stipulation of the parties, and the right of redemption is also allowed the mortgagor until the mortgage is cut off by foreclosure and sale. Under these statutes the title remains in the mortgagor until a

foreclosure and sale, but in case of a violation of the conditions named in the mortgage the mortgagee may take possession of the mortgaged property, and hold it until sale under the power contained in the mortgage. Subject to this right and the lien created by it, the mortgagor remained the owner of the property, and could sell the same, if the sale was made in conformity with the stipulations contained in the instrument to pass title thereto. The statute defines what a mortgage is. It denominates it merely as a security for the payment of a debt, the title and right of possession remaining in the mortgagor until forfeiture or default. This must be so, because under the statute the instrument does not become a mortgage unless it is expressly stated therein that it is intended for security, and also states the amount for which it is intended as security. When that fact is stated, and not before, the instrument becomes a chattel mortgage, but is subject to the stipulations of the parties therein. Section 2807, Rev. St. Wyo.; Davenport v. Bartlett, 9 Ala. 179; Graham v. Blinn, 3 Wyo. 746, 30 Pac. 446; Sanford v. Bell (N. D.) 48 N. W. 434; 1 Cobbey, Chat. Mortg., sec. 4; Moore v. Norman (Minn.) 45 N. W. 857, 9 L. R. A. 55, 19 Am. St. Rep. 247. These stipulations referred to give the mortgagor absolute control and possession, with a right to sell, while the mortgagee would have no right to take possession or to sell the property until default was made in the conditions therein. In Moore v. Norman, supra, the old rule is seriously criticised. The court says: "We can discover no reason for a distinction which commends itself, and no reason is suggested in the decisions cited by the respondents, except that based upon the technicality above referred to— that a mortgage upon real estate is a mere lien, while a mortgage on personal property vests the legal title thereof in the mortgagee." The case of Conkling v. Shelley, 28 N. Y. 360, 84 Am. Dec. 348, and other cases cited by counsel for the appellants to sustain their position, are not applicable to the facts in this case. In the above case the mortgagee placed the

mortgagor in possession of his stock of goods, with general au-
thority to sell them and pay over the proceeds. The mort-
gagee sold part of the goods, but did not pay over the proceeds.
The creditors of the mortgagor levied an execution upon the
goods, claiming that the dealings of the parties rendered the
mortgage void as to creditors. The court held that the money
collected through sales made by the mortgagor should be con-
sidered as paid upon the chattel mortgage given to the mort-
gagees, because made by their authority and express agree-
ment, for their benefit; that the creditors should not suffer be-
cause of the misconduct of the mortgagor while acting under
the express directions of the mortgagee. This and other de-
cisions cited rest upon the common-law rule, or involve ques-
tions of accounting between the mortgagor and mortgagee, or
where creditors claim the mortgage to be fraudulent; but no
case is cited holding that the mortgagor is an agent for the
mortgagee for the purpose of making a warranty, so as to bind
the latter in selling his own goods, unless there be express or
implied authority creating such agency. In the case before us,
Shurtliff was the owner of the property, subject to the lien of
the mortgage. He had possession and right of possession until
deprived of it by the terms of the contract. The respondent
owned the mortgage, and the appellants were informed person-
ally and by the record of its interest. When the appellants
sought to purchase the property from Shurtliff, they were in-
formed of the mortgage. They then sought the respondent,
and were informed of its interest by virtue of the mortgage,
and that any agreement they made with Shurtliff in purchas-
ing the property would be satisfactory to the company; that, if
appellants bought, the company would give Shurtliff authority
in writing to sell as provided in the mortgage, but with the
understanding that the proceeds were to come to the mort-
gagees, to apply upon the Shurtliff mortgage. The property
was purchased from Shurtliff, and the mortgage held by the
respondent was released. The note in question was delivered

to the latter by Shurtiff, and Shurtliff was credited with the proceeds on his note and mortgage. Shurtliff was in possession from the beginning. He had authority to sell, so far as the mortgagee's interest was concerned, but no right to receive the purchase money. The mortgage provided that the proceeds of the sale should be applied upon the debt. In giving permission to sell, the respondent merely waived its right to object to a sale. It waived its lien upon the property in consideration of such payment being made to it. When this waiver was made, Shurtliff, as owner, had a license and right to sell the property. He was then dealing with his own property, and was not the agent of the mortgagee for the purpose of making any warranty so as to bind it, and as a consequence the respondent is not responsible for any warranty or misrepresentation made by Shurtliff to the appellants as to the number or condition of the property sold. A release of respondent's mortgage, or merely granting Shurtliff permission to sell, would not necessarily carry with it the right to misrepresent the property, or make warranties concerning it that would bind the mortgagee. If any one is liable on such warranties, the party making them is alone responsible, and should have been made a defendant in an action.

2. The appellants obtained knowledge of the alleged deficiency in the number of machines sold very soon after they gave their notes, and the release was obtained from the respondent, yet they never informed the respondent of such deficiency or imperfect condition of the property purchased until at the time this action was tried, which was more than sixteen months subsequent to the time of the sale. Knowing all the facts; knowing of the alleged fraud on the part of Shurtliff; knowing that the respondent had taken their note and credited the amount of the purchase price on Shurtliff's indebtedness to it, and had released the property from their own mortgage; knowing that their dealings with Shurtliff in connection with the mortgage were not terminated, but were still progressing;

knowing that the respondent was waiving a valuable right and surrendering valuable securities while believing that appellants were contented with their bargain—they kept silent for over sixteen months, and not until this action was tried did they inform respondent of the alleged warranty of Shurtliff, or that they found any fault with the bargain. They kept silent when, in justice to a party they seek to charge, they should have spoken. Such conduct on the part of one seeking relief is not to be commended. 11 Am. and Eng. Ency. Law, 427; Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; 2 Pom. Eq. Jur. 965. The right of the respondent to cancel the credit to Shurtliff and take timely proceedings against him to indemnify itself, had it been liable upon the warranty, was a valuable right, which was lost by the appellants' silence and delay. Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811.

All of the assignments of error relied upon are treated in the respective briefs of counsel as merged in the questions decided. In our opinion, the court below did not err in directing a verdict for the plaintiff. The judgment of the district court is affirmed, with costs.

BASKIN and BARTCH, JJ., concur.