## POFF v. MILLER. (No. 255—3463.)

(Commission of Appeals of Texas, Section B. Dec. 14, 1921.)

1. **Tender** ⊗=13(1)—Where maker's attorney stated that he had the money in his pocket to pay all actually due, which owner and payee refused, tender held sufficient.

Where the maker turned over to her attorney the amount due on her note, and the latter told the payee bank and the party really owning debt that he had the actual money in his pocket and was ready to pay it the amount his client legally owed, and both refused the offer outright and did not demand that he show the money nor request time for considering, held, that the tender was sufficient.

2. **Tender** ⊗=9—Of payment of note after maturity of debt and before suit held sufficient.

Where a suit could have been instituted immediately on default of note and mortgage and before any tender was made, but there was a delay, and the maker tendered payment before suit, tender at such time was sufficient, even though after maturity of the debt.

3. **Tender** ⊗=18—Mortgagee not required to keep tender good by renewing it on chattel mortgage foreclosure, where it had been flatly refused.

In chattel mortgagor's action for actual and exemplary damages and wrongful issuance and levy of a sequestration writ, held, that it was not necessary that plaintiff keep her tender good by formal renewal and actual tender of money in the foreclosure suit, since such would have been useless, in view of the defendant's flat and final refusal of the tender.

4. **Sequestration** ⊗=21—Defendant held to have had no right to seize property after tender of amount actually due.

In chattel mortgagor's action against a party actually owning mortgage for damages for alleged wrongful issuance and levy of a sequestration writ, facts held to show that the defendant had no right under any theory, in view of a tender made of the amount actually due, to seize the property, and that he was justly penalized for having done so.

5. **Sequestration** ⊗=21—Party liable for exemplary damages for wrongful writ secured maliciously.

In an action for damages for wrongful sequestration of property, evidence held to show that the sequestration was not only wrongfully issued, but secured maliciously and in reckless disregard of the rights of plaintiff, chattel mortgagor, making the defendant liable also for the exemplary damages.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Suit by Eloisa C. Poff against W. S. Miller. Judgment for plaintiff, and the defendant appealed to the Court of Civil Appeals, which reversed the judgment, and rendered judgment for the defendant (217 S. W. 399), and the plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.

C. M. Wilchar and V. M. Brown, both of El Paso, for plaintiff in error.

Lea, McGrady, Thomason & Edwards, of El Paso, for defendant in error.

POWELL, J. This is an action in damages instituted in the district court of El Paso county, Tex., by Eloisa C. Poff against W. S. Miller, for the recovery of actual and exemplary damages resulting from an alleged wrongful issuance and levy of a sequestration writ. The case was tried without a jury, and the nature and result of the suit will fully appear from the findings of fact and conclusions of law filed by the trial court, as follows:

### Findings of Fact.

I. "In September, 1917, the plaintiff, Eloisa Poff, a feme sole, called on the defendant, W. S. Miller, for a loan of $50; Miller at the time being engaged as a money lender in the city of El Paso, under the name of Equitable Loan & Realty Company, of which he was the owner and manager. Miller had her execute a note, payable to the American Trust & Savings Bank, for the sum of $55, and signed the note as a purported surety. The note was left with the bank, and Eloisa Poff received $49.50. She was charged 50 cents for interest, and $5 was paid to Miller, the defendant herein, making the total sum of $55. The note was due in 30 days. At the time of the execution of the note Eloisa Poff also executed a chattel mortgage in favor of W. S. Miller, covering one H. P. Nelson concert grand player piano and 12 rolls of music, to secure Miller against any loss in the joint execution with her of the note mentioned, or of any extension thereof. Thereafter, upon five different occasions between that date and about April 1, 1918, a new note was executed in the sum of $55, in lieu of the original note, payable to the American Trust & Savings Bank, in the execution of which Miller joined, and upon each occasion Eloisa Poff paid to Miller $5.50, of which 50 cents was for interest, and $5 ostensibly being paid to Miller for joining in the execution of the note. At all of the times mentioned there was an agreement or understanding between Miller and the bank that Miller was to have on deposit at the bank enough money to cover any and all notes payable to the bank, executed under the circumstances set forth above, to protect the bank against any loss, and during all of said times Miller had a large number of notes at said bank, mostly short term notes, executed under similar circumstances, protected by the fund which he kept at the bank under this understanding."

II. "W. S. Miller was at all times the real owner of the note or notes involved in this suit, and was the real party in interest, and the scheme outlined above, under which the loan was made to Eloisa Poff in this case, was a scheme, device, or subterfuge upon the part of W. S. Miller to evade the usury statutes of Texas and to conceal his usurious practice, and

⊗=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the contract between Miller and Eloisa Poff was usurious."

III. "The contract being usurious, the payments, amounting to $27.50, should be credited on the principal sum which was $50, leaving a balance on the principal of $22.50, and on or about the 1st day of April, 1918, the plaintiff, through her attorneys, tendered to the American Trust & Savings Bank and to W. S. Miller the sum of $22.50 in satisfaction of the note, which had matured on March 28, 1918, and at all times thereafter was ready, able, and willing to pay said amount of money, but the same was refused by the said bank and by the said Miller, who would never have accepted the same, and would at all times have refused to accept same, and thereafter any further tender or offer to pay was unnecessary."

IV. "Thereafter, on the 6th day of April, 1918, the defendant, who in the meantime had procured the note from the bank, sued the plaintiff in the justice's court of precinct No. 1 of El Paso county, Tex., for the full amount thereof, $55, and interest at 8 per cent. and attorney's fees, and caused to be issued a writ of sequestration for the piano, claiming that plaintiff was indebted to him in the sum of $55 and attorney's fees, and that he feared she would remove the property out of the county during the pendency of the suit in the justice's court. Under this writ the piano and music rolls were taken into custody by the constable, and from about the 9th day of April, 1918, until the 13th day of January, 1919, remained in the custody of the court, being returned to Eloisa Poff by Miller about the latter date."

V. "The affidavit upon which the sequestration writ was issued was untrue, in that Eloisa Poff did not owe Miller the sum of $55, and had tendered to him $22.50, the amount she did owe, and he had no reasonable or probable grounds to fear that she would remove the property from the county during the pendency of the suit."

VI. "After trial of the sequestration case in the justice court, it was appealed to the El Paso county court at law, and upon trial in that court on December 16, 1918, judgment was rendered in favor of the plaintiff in that suit W. S. Miller (defendant here), for $22.50, which had been paid into court by the defendant, Eloisa Poff, subject to the order of the plaintiff, it being found that she was only indebted to him in that amount, and it was further adjudged that Eloisa Poff recover all of her costs, and that the writ of sequestration be dissolved and be of no further force and effect. Said judgment became final, and the litigation became final, not having been appealed therefrom, thereby terminating the litigation between the parties in favor of Eloisa Poff, before the institution of this suit.

VII. "At the time of the making of the affidavit and institution of the suit in the justice's court, and the issuance and levy of the writ of sequestration, Eloisa Poff was only indebted to Miller in the sum of $22.50, and the suit was wrongfully and maliciously filed, and the writ of sequestration wrongly, willfully, and maliciously issued and caused to be executed."

VIII. "The plaintiff herein was deprived of the use of her piano for a period of nine months, and the reasonable rental value thereof for said period is found to be $90. The piano at the time it was returned had been scratched and marred and depreciated in value $10, making a total of actual damages suffered by plaintiff of $100."

IX. "The plaintiff became liable to her attorneys in the sum of $50 for attorney's fees in defending the sequestration suit, and same is found to be a reasonable charge."

X. "The court finds that plaintiff suffered humiliation."

XI. "At the time she signed the first note with Miller the plaintiff did not understand the transaction and thought that she was borrowing $50; she did not know that she was having any dealings with the bank and was not advised of Miller's scheme to use the bank; she did not speak or read English; at the time she negotiated the loan with Miller, she was told by him to bring $5.50 each month, none of which was intended by Miller to be applied, or ever applied by him on the principal of the note."

### Conclusions of Law.

I. "The contract being usurious, plaintiff was entitled to have the $27.50, which she had paid to defendant previous to the institution of his suit in the justice's court, credited upon the initial indebtedness of $50, leaving a balance due thereon amounting to $22.50, which, having been tendered previous to the filing of the suit and refused, and which never would have been accepted by Miller, he by his action waived formal tender, and the grounds for the sequestration action not being founded upon probable or reasonable cause, the sequestration was wrongful, rendering the defendant liable for the actual damages sustained."

II. "The writ of sequestration having been issued wrongfully and maliciously and in reckless disregard of the plaintiff's rights to her damages in the sum of one hundred dollars actual damages, the defendant, Miller, is liable in exemplary damages which the court assessed in the sum of $600."

III. "Defendant, by his refusal of tender and by his attitude toward tender, obviated the necessity of formal tender."

IV. "The plaintiff having offered to pay the amount of her indebtedness to Miller, which the court found to be $22.50, and which was refused by Miller, there was in effect a release of the mortgage in question and defendant had no further claim thereto, therefore rendering his sequestration wrongful on that ground."

Upon request of defendant in error, the trial court filed further finding of fact and conclusion of law as follows:

### Finding of Fact.

I. "The court finds that after the note had been executed, it was taken to the American Trust & Savings Bank by the defendant, Miller, in company with the plaintiff, Mrs. Poff, that the teller of the bank handed to Miller $54.50, who in turn handed to Mrs. Poff the sum of $49.50, the payment being made out of the general fund of the bank, and that at the time the payment was made out of such general fund the defendant Miller had on deposit in said general fund a sum of money suf-

ficient to cover all such payments that were or should be made by the bank on the character of paper under consideration; that 50 cents was retained by the bank as its interest, and that $5 was retained by Miller."

### Conclusion of Law Based upon the Above Finding.

I. "The court concludes, under the above finding of fact, that while as a matter of bookkeeping the money paid to Mrs. Poff was the money of the bank, actually it was Miller's money, he being the owner of the note and having a sufficient amount of money deposited in the general fund of the bank to make such payment."

The Court of Civil Appeals finds no fault with the facts as found by the trial court, and it approves the latter's conclusions of law that the contract in question was usurious, and that the plaintiff in error legally owed defendant in error only $22.50, when this controversy arose and when the alleged tender was made.

But the Court of Civil Appeals holds the tender of payment insufficient in law mainly in two respects. As a result of said holdings, the court concludes that the mortgage was still in effect, and that that instrument itself, by its very provisions, authorized a seizure of the property in default of payment; that the seizure under sequestration was no more than the mortgagee could have done under the mortgage itself. Therefore the latter court concluded that plaintiff in error had no right in law to any damages and reversed the judgment of the trial court and rendered judgment for defendant in error. See 217 S. W. 399.

The Court of Civil Appeals held the tender insufficient in law for at least two reasons: (1) That it was not made on the very day the note matured; (2) that, even if the tender as first made had been sufficient, the same was not kept good by an actual and formal tender of the money in the justice and county courts, where the sequestration suit in question was tried. We think the Court of Civil Appeals erred in construing the law of tender as it did, and we now address ourselves to a consideration of those holdings.

[1] Before proceeding further, we think the tender was sufficient, so far as the nature thereof was concerned. Plaintiff in error turned over to her attorney the $22.50 due on the note. The latter told both the bank and Miller that he had the actual money in his pocket and was ready to hand it over to them at once; that said amount was all his client legally owed on the note in question. Both refused the offer outright. They did not question the ability of the attorney to actually deliver the money at once; they made no demand that he show the actual money; they did not request any time for consideration before accepting the tender or rejecting it; they said positively they must have the

face value of the note. This tender was sufficient, in our judgment. We think we are sustained in that view by the following authorities:

The Supreme Court of Texas, in case of Haney v. Clark, 65 Tex. 93, holds as follows:

"The question propounded to him was proper. He had previously testified that he had gone to Haney and told him that he had the money to pay the balance due from Clark and wife, and had asked Haney to make a calculation as to the amount of this balance and he would pay it, and had demanded a reconveyance of the land. This constituted a sufficient tender under the circumstances, and more especially as Haney refused to recognize Mrs. Clark's right to redeem the land by the payment of any sum whatever."

The Supreme Court of North Carolina, in the case of Smith v. Loan Association, 119 N. C. 257, 26 S. E. 40, held that when a debtor states to his creditors that he has the money in the bank in the same building in which the conversation occurred, and is ready to pay the sum admitted by him to be due, but the creditors refused to receive it, it is a good tender, though the money itself be not actually produced.

[2] But, even if the tender was sufficient in the respects above set out, the Court of Civil Appeals says it cannot avail if made after the note has matured, even though it be made before suit is instituted. We cannot concur in this view. We do not think it is the law in states where a mortgage is merely a lien to secure payment of debt, and where a title does not vest in mortgagee immediately upon default in payment. In Texas, the only office of the mortgage is to secure the payment of the debt in question. It is unquestionably true that Miller could have instituted his suit immediately upon default and before any tender was made, but he did not do so. When he delayed the institution of his suit, he gave the debtor that much more time in which to pay her debt without having her property seized. We think it would be a harsh and unjust rule that would permit a mortgagee to proceed to file suit and seize property under a mortgage at the very time the mortgagor was offering to pay the full amount legally due under the mortgage. Such a rule would severely penalize a debtor, just because he had failed to pay his debt on the very day it matured, even though the mortgage itself contained no provision that he could not later pay the debt and discharge the lien. Such a rule has no basis in reason under our Texas system, and smacks entirely too much of the technical to merit much consideration in our courts.

We think the correct rule in this connection has been well stated as follows:

"The common-law rule that a tender cannot be made after a default has been changed in some states by statute or by the decisions of the court of last resort. In case of money de-

mands, where the amount is liquidated or capable of being made so by mere computation and the damages are merely the interest, the rule that a tender may be made after a default is now almost, if not wholly, universal. And where such a rule obtains a tender of the amount due, with interest to date, may be made at any time before suit, except in cases where time is of the essence of the contract and the circumstances will not warrant a court of equity in relieving the party from the consequences of his default. Hunt on Tender, § 281."

The quotation from the text-writer just above set out was approved by the Court of Civil Appeals at Amarillo, Tex., in the case of Insurance Co. v. Elliott, 193 S. W. 1096. That case was carried to the Supreme Court of Texas on application for writ of error, which was refused. Practically the same rule has been well stated as follows, by 28 Cyc. p. 147:

"The general rule now is that in case of money demands, where amount is liquidated, or capable of being made so by mere computation, and the damages are merely the interest, a tender may be made after default at any time before action."

This same rule of law is approved in a thoroughly considered opinion by the Supreme Court of the United States, in case of Colby v. Reed, 99 U. S. 560, 25 L. Ed. 484.

In addition to the Texas decision, and other authorities just cited, we will hereafter refer to still further decisions, in connection with other propositions, which also overrule the Court of Civil Appeals, when it holds in the instant case that a tender of payment cannot stop foreclosure proceedings, unless made on the very day the debt matured. It follows, from what has been said above, that, inasmuch as the tender of payment in the case at bar was made before suit was filed, it was sufficient, even though it was made after maturity of the debt.

[3] But, even if that be true, the Court of Civil Appeals further contends that the tender could not avail, because it was not kept good, inasmuch as it was not formally renewed and the money actually tendered in the justice court in the foreclosure suit. Our reply to that contention is that, under the circumstances of this case, it was not necessary to keep the tender good, and that this contention of the Court of Civil Appeals is also largely technical. We think the correct rule covering the contention with reference to keeping the tender good has been well stated as follows:

"In those jurisdictions where the theory prevails that a mortgage is merely a security for the debt, it is held that a tender of payment after maturity of the debt has the same effect as a tender on the law day, and that it releases the lien of the mortgage given to secure it, and this though the tender is not kept good." 8 Ann. Cas. 364.

We think no technical plea of tender in the justice court foreclosure suit was necessary. The tender before suit had been flatly and finally refused, and the trial court found as a matter of fact that no tender of $22.50 under any circumstances would have been accepted by the mortgagee. The law is not given to requiring useless performances, and we think no further tender, especially of a technical or formal kind, was required under the circumstances of this case. We think our Supreme Court entirely correct when, in granting the writ herein, it stated that it thought "the tender to Miller of the amount due, and the refusal to accept it before suit, deprived him of any right to seize the property." Miller had no right to seize the property, except for the purpose of collecting his debt, and, when the full amount legally due was being offered him, that purpose had vanished.

The rules of law in this connection have been vigorously stated by the Supreme Courts of several of the states, from some of which we quote as follows:

The case of Caruthers v. Humphrey, 12 Mich. 270, is a usury case, and one very much in point with the case at bar. In that case the Supreme Court of Michigan speaks as follows:

"It remains only to consider the effect of the tender. It is clearly proved, and the fact is not disputed, that on the 28th day of July, 1862, Humphrey tendered to complainant the full amount due on the two mortgages, exclusive of the bonus in each case, and the interest thereon—in other words, exclusive of what we have found to be usury. This tender was refused by complainant, and Humphrey, with full notice to complainant, deposited the money on the same day with a Mr. Simonson, near complainant's residence, to be paid to complainant when he should choose to receive it. But the money was not brought into court, nor does it appear by the evidence that the tender was kept good up to the time of the hearing, though it is shown to have been still in Simonson's hands when the evidence was taken. The naked question, therefore, is whether the tender alone, made after default, or failure to pay on the day when due, had the effect to discharge the mortgages, or release the land from their encumbrance.

"We think this question must be answered in the affirmative. A mortgage is no longer in this state what it was originally at common law, a grant of the land to the mortgagee, defeasible upon condition subsequent, and to become absolute on failure to pay at the specified day. It is but a security for the debt. The estate in the land is still in the mortgagor; and payment at any time before foreclosure or sale, or (in case of foreclosure by advertisement) at any time before the expiration of the time of redemption—including, of course, any legal costs which may have been made—will discharge the mortgage in the same manner as if made on the day of payment mentioned in the mortgage; and no reconveyance is necessary to vest the title in the mortgagor, in

the one case more than the other. The mortgage, therefore, is but a lien upon the land as security for the debt; and, so far as relates to the effect of a tender, we think this lien is precisely analogous to that of a lien upon, or a pledge of, goods as security for a debt. And in such case it is well settled that, while a tender of the amount due does not, without acceptance, extinguish the debt, nor release the debtor from personal liability, it extinguishes the lien, and the creditor loses his right to all collateral securities. See Moynahan v. Moore, 9 Mich. 9.

"We have been saved the labor of a full discussion of this question, by the decision of the same question here involved by the Court of Appeals in New York, in Kortright v. Cady, 21 N. Y. 343. And in the able opinions of Davies and Comstock, Judges, given in that case, we fully concur. We think, therefore, the lien of the mortgage was wholly discharged by the tender, and that complainant can look only to the personal responsibility of his debtor. And, this being a proceeding to foreclose— or, in other words, to enforce the lien of—the mortgages, the court below was right in dismissing the bill, and the decree of that court must be affirmed with costs."

The Supreme Court in Minnesota, in the much later and well-considerd case of Moore v. Norman, 43 Minn. 428, 45 N. W. 857, 9 L. R. A. 55, 19 Am. St. Rep. 247, holds as follows:

"We are of the opinion that the effect of a tender of the amount of a debt secured by a chattel mortgage though made after maturity, is to extinguish and discharge the lien, the debt only remaining, and that it is not necessary to keep the tender good by depositing the money in court, in case an action is thereafter brought by the mortgagee to obtain possession of the chattels. It is urged in some of the cases, where a different conclusion has been reached, that the adoption of this rule must work great hardship and injustice to the mortgagee, frequently causing a loss of the entire debt; but certainly, in this respect, the rule will not be more unjust when invoked as to chattel than when governing a real property mortgage, or than when it is applied, as it always has been without hesitation, in the case of a pledge. See Norton v. Baxter, supra, and cases cited. As was said in the Kortright Case, it is not perceived how the mortgagee is to be embarrassed by the establishment of this rule. If the mortgagor does not tender the full amount due the lien of the mortgage is not extinguished and he runs no risk in accepting it. If, upon the other hand, it is sufficient in amount, his debt is paid, and that is all he has any right to demand. It is his own folly if he attempts to exact more. But, in view of the serious consequences which might possibly result from a refusal to accept such a tender, the proof should be clear that it was fairly made, deliberately and intentionally refused by the mortgagee, that sufficient opportunity was afforded to ascertain the amount due, and that a sum sufficient to cover the whole amount due was absolutely and unconditionally tendered. Tuthill v. Morris, 81 N. Y. 94. See, also, upon the sufficiency of a tender, Storey v. Krewson, 55 Ind. 397;

Wilder v. Seelye, 8 Barb. 408; Bank v. Fant, 50 N. Y. 474; Nelson v. Robson, 17 Minn. 284 (Gil. 260)."

It is interesting to note that the Supreme Court of Vermont does not go quite as far, where the tender is made after maturity of the note, as do the courts just referred to. But even in Vermont a tender after maturity suspends the mortgagee's right of action, and it can only be revived by a refusal of the mortgagor to pay the money so tendered when the mortgagee finally signifies a willingness to receive it. We quote from the Supreme Court of Vermont in case of McDaniels v. Reed, 17 Vt. 674, as follows:

"The case of Edwards v. Fire Insurance Co., 21 Wend. 468, which has been cited, goes farther than we are required to go in this case. It was there held that the tender was a discharge of the mortgage security. Whether that is so or not, we hold that it was a suspension of the plaintiff's right of action, at least, and that it could only be revived by a refusal, on the part of the defendants, to pay the money, when the plaintiff should signify a willingness to receive it. If the tender had been made on the day the money became due, we are inclined to think it would have the effect given to it in that case, leaving the plaintiff to seek his remedy by a suit upon the indebtedness. This disposes of a farther objection—that there was no offer to show that the tender had been kept good and the money brought into court. The money need not be in court; it had nothing to do with the suit on trial. That action was for the recovery of land, not money. It was sufficient, if the defendants made a good tender and had the money ready to deliver to the plaintiff, when he should call for it."

The Court of Civil Appeals at Dallas, Tex., refers to cases of Kortright v. Cady, supra, and Moore v. Norman, supra, and holds as follows in case of Bledsoe v. Palmer, 81 S. W. 97:

"The trial court erred in excluding the testimony of the witness Shuman that on the day the note matured, and between business hours, he tendered the amount of the note to appellee, and that he refused to accept it. This testimony was pertinent, as tending to show a release of the mortgage. Kortright v. Cady, 21 N. Y. 343, 78 Am. Dec. 145; Moore v. Norman (Minn.) 45 N. W. 857, 9 L. R. A. 55, 19 Am. St. Rep. 247."

The case just cited was an appeal from the county court, and did not reach the Supreme Court of Texas.

As said by the Supreme Court of Vermont in the case of McDaniel v. Reed, supra, we are not required to go as far in the case at bar as did the courts of Michigan, New York, and Minnesota in the cases hereinbefore cited. We are not prepared to say that the tender of payment in the instant case actually discharged the lien in the mortgage. We do not pass upon that point, as it is not necessary to a decision of this case. We have

here no effort to foreclose a mortgage lien. In other respects, we feel sure the decisions quoted announced proper rules of law.

But we are willing to say, with the Supreme Court of Vermont, that the tender in the instant case did, at least, suspend Miller's right to seize the property in question, and that said right could only be revived by a refusal on the part of Mrs. Poff and her attorney to pay the money so tendered, had Miller finally signified a willingness to accept it. The findings of fact in this case show that the $22.50 was at all times ready for Miller, but that he never asked for it or accepted it until the courts had refused to award him a larger recovery.

Of course, the very essence of the rules herein discussed is that the mortgagor must tender the full amount legally due on the note. When he has done that, the mortgagee must either accept the amount tendered, or at least refrain from seizing the property under mortgage. When there is a controversy, as in the case at bar, as to the amount due on the note, the mortgagee may contend for his own views in reference thereto, even to the extent of seizing the property; but, when he does so, he must take the consequences, if his contention as to the amount of the debt does not finally prevail in the courts. In other words, he holds out for his own views and seizes the property at his peril. If the courts had determined that plaintiff in error owed Miller more than $22.50, the tender of itself would not have availed to stop the seizure of the property in any way. But the courts actually decided that $22.50 was the extent of the indebtedness. In fact, this suit for damages was not even instituted until the controversy over the amount due on this note had been finally determined in court. We are clearly of the view, in the case at bar, that Miller has lost no rights. He has not been imposed upon or unjustly treated, even though he was prevented by this litigation from continuing to collect $5.50 every month on a $55 debt, and never reducing the principal thereof.

[4] As heretofore stated, the debt amounted, in law, to only $22.50. Miller could have had that money without delay or expense. He chose, not only to litigate and ask for foreclosure of his mortgage, but to seize this property under sequestration. He took the latter course in spite of every assurance from Mrs. Poff and her attorneys that the property would not be moved out of the state, but kept intact in El Paso to await the issue of the foreclosure suit under the mortgage. Where there is a bona fide controversy between the maker and payee in a note secured by a mortgage, it might be said that the payee should be entitled to litigate the controversy and still retain his lien on the property, even though in the ensuing litigation the court should decide that the amount tendered by the maker of the note was all that was legally due thereunder. In other words, that a mere tender of payment should not, under such circumstances, of itself, actually discharge a lien, but that actual payment alone, after the termination of the litigation, is necessary to effect such a result. But certainly, under circumstances which are present in the case at bar, we do not think any one could seriously contend that a tender of the amount legally due should fail, in any event, to suspend a man's right to seize another's property and actually deprive him of the use and possession of it under a sequestration writ. In fact, as we view this case, Miller had no right, under any theory, in view of the tender made, to seize this property as he did, and that he was justly penalized for having done so.

[5] It follows, from what has been said, that we think the sequestration was wrongfully issued, and that Miller was liable for the damages actually flowing therefrom. Furthermore, the trial court found as a fact that the writ was not only wrongfully issued, but was issued "maliciously and in reckless disregard for the rights of plaintiff in error." This finding of fact is overwhelmingly sustained by the evidence. That being true, Miller was liable also for exemplary damages. The record contains no assignment of error attacking the judgment as being excessive in any respect. Therefore we think, as Miller had no right to seize the property, the judgment of the district court should be affirmed.

Consequently we recommend that the judgment of the Court of Civil Appeals be reversed and that of the district court affirmed:

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.