MILLER v. POFF. (No. 1030.)

(Court of Civil Appeals of Texas. El Paso. Dec. 11, 1919. Rehearing Denied Jan. 15, 1920.)

1. TENDER ⊚⇒22—ANSWER RELYING ON WAIVER OF FORMAL TENDER MUST ALLEGE DEPOSIT IN COURT.

An answer, admitting part of the claim sued on and pleading waiver of formal tender of the amount admitted, must also plead the deposit in court of the amount admitted to be due.

2. TENDER ⊚⇒5—WAIVER OF TENDER MUST BE MADE ON DATE PAYMENT IS DUE.

A waiver of tender, like the tender itself, to be binding must be made on the date payment is due.

3. SEQUESTRATION ⊚⇒21—NO LIABILITY FOR SEQUESTRATION OF PROPERTY PLAINTIFF HAD RIGHT TO TAKE UNDER CHATTEL MORTGAGE.

Where plaintiff took by sequestration property which he was entitled to take under a chattel mortgage, he is not liable in damages though the ground of sequestration was not established.

4. SEQUESTRATION ⊚⇒15—PLAINTIFF NOT LIABLE FOR INJURY TO PROPERTY SEIZED IN HANDLING.

Plaintiff is not liable for the scratching of the sequestered piano, unless he took part in the handling of it, or directed it.

Appeal from District Court, El Paso County; L. A. Dale, Special Judge.

Suit by Eloisa C. Poff against W. C. Miller. Judgment for the plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellant.

Brown & Wilchar, of El Paso, for appellee.

WALTHALL, J. Eloisa C. Poff, appellee, brought this suit against W. S. Miller, appellant, to recover damages, actual and exemplary, for an alleged wrongful issuance and levy of sequestration. The case was tried without a jury. The findings of fact by the trial court, which we deem necessary to state, present the issues of fact and law to which the several assignments of error relate, and we need not further state the issues.

"Findings of Fact.

"In September, 1917, the plaintiff, Eloisa Poff, a feme sole, called on the defendant, W. S. Miller, for a loan of $50, Miller at the time being engaged as a money lender in the city of El Paso, under the name of Equitable Loan & Realty Company, of which he was the owner and manager. Miller had her execute a note payable to the American Trust & Savings Bank, for the sum of $55, and signed the note as a purported surety. The note was left with the bank, and Eloisa Poff received $49.50. She was charged 50 cents for interest, and $5 was paid to Miller, the defendant herein, making the total sum of $55. The note was due in 30 days. At the time of the execution of the note Eloisa Poff also executed a chattel mortgage in favor of W. S. Miller, covering one H. P. Nelson concert grand player piano and twelve rolls of music, to secure Miller against any loss in the joint execution with her of the note mentioned, or of any extension thereof. Thereafter, upon five different occasions between that date and about April 1, 1918, a new note was executed in the sum of $55 in lieu of the original note, payable to the American Trust & Savings Bank, in the execution of which Miller joined, and upon each occasion Eloisa Poff paid to Miller $5.50, of which 50 cents was for interest, and $5 ostensibly being paid to Miller for joining in the execution of the note. At all of the times mentioned there was an agreement or understanding between

Miller and the bank that Miller was to have on deposit at the bank enough money to cover any and all notes payable to the bank, executed under the circumstances set forth above, to protect the bank against any loss, and during all of said, times Miller had a large number of notes at said bank, mostly short term notes, executed under similar circumstances, protected by the fund which he kept at the bank under this understanding.

"II. W. S. Miller was at all times the real owner of the note or notes involved in this suit, and was the real party in interest, and the scheme outlined above under which the loan was made to Eloisa Poff in this case was a scheme, device, or subterfuge upon the part of W. S. Miller to evade the usury statutes of Texas and to conceal his usurious practice, and the contract between Miller and Eloisa Poff was usurious.

"III. The contract being usurious, the payments amounting to $27.50 should be credited on the principal sum which was $50, leaving a balance on the principal of $22.50, and on or about the 1st day of April, 1918, the plaintiff, through her attorneys, tendered to the American Trust & Savings Bank and to W. S. Miller the sum of $22.50 in satisfaction of the note, which had matured on March 28, 1918, and at all times thereafter was ready, able, and willing to pay said amount of money, but the same was refused by the said bank and by the said Miller, who would never have accepted the same, and would at all times have refused to accept same, and thereafter any further tender or offer to pay was unnecessary.

"IV. Thereafter, on the 6th day of April, 1918, the defendant, who in the meantime had procured the note from the bank, sued the plaintiff in the justice's court of precinct No. 1 of El Paso county, Tex., for the full amount thereof, $55, and interest at 8 per cent. and attorneys' fees, and caused to be issued a writ of sequestration for the piano, claiming that plaintiff was indebted to him in the sum of $55 and attorneys' fees, and that he feared she would remove the property out of the county during the pendency of the suit in the justice's court. Under this writ the piano and music rolls were taken into custody by the constable, and from about the 9th day of April, 1918, until the 13th day of January, 1919, remained in the custody of the court, being returned to Eloisa Poff by Miller about the latter date.

"V. The affidavit upon which the sequestration writ was issued was untrue, in that Eloisa Poff did not owe Miller the sum of $55, and had tendered to him $22.50, the amount she did owe, and he had no reasonable or probable grounds to fear that she would remove the property from the county during the pendency of the suit.

"VI. After trial of the sequestration case in the justice's court, it was appealed to the El Paso county court at law, and upon trial in that court on December 16, 1918, judgment was rendered in favor of the plaintiff in that suit, W. S. Miller (defendant here), for $22.50, which had been paid into court by the defendant Eloisa Poff, subject to the order of the plaintiff, it being found that she was only indebted to him in that amount, and it was further adjudged that Eloisa Poff recover all of her costs, and that the writ of sequestra-

tion be dissolved and be of no further force and effect. Said judgment became final and the litigation became final, not having been appealed therefrom, thereby terminating the litigation between the parties in favor of Eloisa Poff, before the institution of this suit.

"VII. At the time of the making of the affidavit and institution of the suit in the justice's court, and the issuance and levy of the writ of sequestration, Eloisa Poff was only indebted to Miller in the sum of $22.50, and the suit was wrongfully and maliciously filed, and the writ of sequestration wrongly, willfully, and maliciously issued and caused to be executed.

"VIII. The plaintiff herein was deprived of the use of her piano for a period of nine months, and the reasonable rental value thereof for said period is found to be $90. The piano at the time it was returned had been scratched and marred and depreciated in value $10, making a total of actual damages suffered by plaintiff of $100.

\* \* \* \* \* \* \* \*

"XI. At the time she signed the first note with Miller, the plaintiff did not understand the transaction and thought that she was borrowing $50; she did not know that she was having any dealings with the bank and was not advised of Miller's scheme to use the bank; she did not speak or read English; at the time she negotiated the loan with Miller, she was told by him to bring $5.50 each month, none of which was intended by Miller to be applied, or ever applied by him on the principal of the note.

"Special Findings of Fact.

"I. The court finds that, after the note had been executed, it was taken to the American Trust & Savings Bank by the defendant, Miller, in company with the plaintiff, Mrs. Poff; that the teller of the bank handed to Miller $54.40, who in turn handed to Mrs. Poff the sum of $49.50, the payment being made out of the general fund of the bank; that at the time the payment was made out of such general fund the defendant Miller had on deposit in said general fund a sum of money sufficient to cover all such payments that were or should be made by the bank on the character of paper under consideration; that 50 cents was retained by the bank as its interest; and that $5 was retained by Miller."

Under the findings of fact the trial court concluded as law that, while as a matter of bookkeeping the money paid to Eloisa Poff was the money of the bank, actually it was Miller's money, he being the owner of the note and having at all times a sufficient amount of money deposited in the general fund of the bank to meet such payments; that, the contract being usurious, appellee was entitled to have the $27.50 paid to appellant previous to the filing of the suit in the justice's court credited upon the initial indebtedness of $50, leaving a balance due of $22.50; that a sufficient tender was made of the amount due, Miller having waived a formal tender; that, the grounds for the issuance and levy of sequestration not being founded upon probable or reasonable cause, the sequestration was wrongfully and mali-

ciously issued and levied, rendering appellant liable for damages, actual and exemplary. The court assessed the actual damages at $100, and the exemplary damages at $600, for which judgment was rendered.

Appellant presents 15 assignments of error. The view we take of the controlling issues in the case, however, renders unnecessary a discussion of many of the questions presented.

We think the evidence sufficient to sustain the trial court's findings that Miller was at all times the real owner of the notes involved in this suit, and was the real party at interest, and that the method outlined in the several findings disclose a scheme, device, or subterfuge upon the part of Miller to evade the usury laws of this state, and that the contract between Miller and Eloisa Poff was in fact usurious.

In the third paragraph of the trial court's findings of fact, the court finds that the note upon which Miller brought his suit against Eloisa Poff in the justice court, and in which the sequestration was issued and the piano seized, matured on March 28, 1918. In the same paragraph the court further finds that on April 1, 1918, Eloisa Poff through her attorneys tendered to the bank and to Miller the sum of $22.50 in satisfaction of the note, which tender was refused both by the bank and Miller. In paragraph 4 the court finds that on the 6th day of April, 1918, Miller filed his suit in the justice court. After a trial had in the justice court an appeal was taken to the county court at law, a trial there had on December 16, 1918, resulting in a judgment in favor of Miller for $22.50, "which had been paid into that court by the defendant, Eloisa Poff, subject to the order of the plaintiff." The findings of the court do not disclose when the money was deposited into the county court, nor whether the money was ever deposited in the justice court when the case was pending in that court. C. M. Wilchar, witness for appellee, testified:

"There was an oral tender of the money made in the justice's court, and it was paid into the county court."

We have found in the record no reference, other than above, to the payment of the money into court. We conclude from the above that the $22.50, balance due, was not actually deposited in the justice's court, and no suggestion of a waiver that it be so deposited.

Appellant, by several assignments in different ways, challenges the sufficiency of the facts found and conclusions arrived at by the court and the evidence to sustain the trial court's finding and holding that, after the refusal by the bank and Miller to accept the $22.50 in discharge of the note, "thereafter any further tender or offer to pay was unnecessary," and the fourth conclusion of law that—

"The plaintiff having offered to pay the amount of her indebtedness to Miller, * * * there was in effect a release of the mortgage in question and defendant had no further claim thereto, therefore rendering his sequestration wrongful on that ground."

We have concluded that the court was in error in the above findings and holdings.

[1] An examination of appellee's answer discloses that it does not make profert in curia of the amount tendered, and it is not claimed by appellee that it can be sustained as a technical plea of tender. The answer recites and the pleader evidently relies upon the facts constituting the waiver of tender as made to the bank and Miller, found by the court. A waiver might avoid the necessity of actual counting out the money on the day when due, but we think the answer to this suit when filed should not only plead the waiver, but go further and plead the deposit of the money in court. Tooke v. Bonds, 29 Tex. 425. It is not our purpose now to suggest an exception to the answer, but from the answer to arrive at appellee's view of the facts necessary to sustain the plea of tender. The Dallas Court of Civil Appeals, in Rogers v. People's B., L. & S. Ass'n, 55 S. W. 383, said:

"To render effectual a tender in payment of a moneyed demand before suit has been instituted, the money must be actually deposited in court when suit has been instituted. A mere tender by plea is not sufficient."

[2] It was held in Continental Insurance v. G. A. & J. S. Busby, 3 Willson, Civ. Cas. Ct. App. § 103, that a tender to be valid must be made at the time the money becomes due, quoting with approval from the cases referred to the following:

" 'It is a rule of the common law that a tender must be made on the very day on which the money is due, if that day is fixed and made certain by the contract.' Dixon v. Clark, 5 C. B. 365; Powe v. Powe, 42 Ala. 113; Toulmin v. Sager, Id. 127."

In that case the court further stated:

"In this case the time of payment was absolutely fixed by the contract to be October 1, 1884, not 'on or before' that day, and the evidence very clearly shows that payment was not offered on that day. Even if the alleged tender was otherwise sufficient, it would not be available because not made at the proper time. Having failed to make the tender on October 1, 1884, the assured cannot plead a waiver of payment made by the agent at a former day. What, then, is the state of the case? By the terms of the contract the assured was to pay the installment on October 1, 1884. He did not do so, nor did he make a tender of payment"—holding that the company was thereby absolved from liability."

If a tender of an amount due on a money demand must be made when due, it follows

that a waiver of tender must likewise be made on the day when payment is due. We are also of the opinion that appellee did not keep good the tender or waiver of tender of the amount admitted to be due appellant by depositing the amount into the justice's court; the record not showing a waiver of such deposit.

[3] If there was no tender of the amount due or waiver of tender, it follows that Miller who had the right under his mortgage contract to take possession of the mortgaged property on default, if payment of the unpaid balance of the debt secured thereby is not made, cannot be held liable for damages for simply taking such property by the sequestration, since he does no more by the writ than his contract gave him the right to do with it. Brunson v. Dawson State Bank, 175 S. W. 438, and cases cited. The mortgage given by Eloisa Poff to Miller contains a provision giving the right of possession to Miller upon default, or upon a feeling of insecurity on the part of Miller, which Miller said he had.

Appellant's last assignment claims error in the rendition of judgment for damages either actual or exemplary by reason of the sequestration. The grounds of the court's findings of fact as to damages, actual and exemplary, is indicated in the second conclusion of law, in which it is said that, the writ of sequestration having been issued wrongfully and maliciously and in reckless disregard of the plaintiff's rights to her damages, appellant was liable in the actual and exemplary damages assessed.

If we are not in error in our conclusions as to the tender, the facts showing that appellee was in default in the payment of the note to the extent of $22.50, and that she had executed the mortgage to secure its payment in which she had given the right of possession of the piano to Miller in case of default, or should Miller feel unsafe or insecure from any cause, we have been unable to see why the seizure of the piano under sequestration was wrongful or in any way oppressive. We think the question, under the facts now presented, has often been determined precluding appellee from recovering damages on the grounds of wrongful seizure of the property by sequestration, and that the same was maliciously sued out. In Wedig v. San Antonio Brewing Ass'n et al., 25 Tex. Civ. App. 158, 60 S. W. 567, and followed and approved by the Austin Court of Civil Appeals in Nichols v. Paine, 52 Tex. Civ. App. 87, 113 S. W. 972, in which a writ of error was denied, Judge Collard said:

"It will be seen by the terms of the mortgages that the brewing company, defendant, had the right to take possession of the property and sell it, to pay the debt secured thereby, or any part of the debt. The petition shows that the debt had not been paid in full, and the right to take the property into possession cannot be questioned. The exercise of that right and securing it by process of the court could not be ground for damages. Harling v. Breech, 88 Tex. 300, 31 S. W. 357. Defendant is only charged with doing an act which the contract declared it could do, and it is difficult to see how it would render itself liable for doing it."

[4] The item of $10 damage to the piano, for scratching and marring it, might furnish a claim against the officer having it in charge, but we think not against appellant, unless he took part in the handling of it, or directed it in some way. That appellee was deprived of the use of the piano during the pendency of the suit in the justice court was incident to the right given in the mortgage.

Other questions are raised by some of the assignments which we need not discuss.

The case is reversed, and judgment here rendered for appellant.