## J. M. RADFORD GROCERY CO. v. JAMISON. (No. 1109.)

(Court of Civil Appeals of Texas. El Paso. April 29, 1920.)

I. Contracts ⬤⟿333(5)—Pleading of contract to extend line of credit held insufficient.

Allegation of petition that defendant agreed and bound itself to extend to plaintiff a line of credit for goods, wares, and merchandise is not a sufficient statement of a contract.

2. Contracts ⬤⟿333(5)—Petition on contract must aver all material parts.

Petition in action on contract must aver every material part of it, or so much as is essential to the cause of action, as the material facts of a contract cannot be presumed.

3. Contracts ⬤⟿337(5)—Petition on contract must state time for performance.

Petition in action on contract must state the time at which defendant should have performed, and if the contract specified no time for performance, it should be averred that it was to be performed on request or in a reasonable time, and that such request was made or that a reasonable time has elapsed.

4. Contracts ⬤⟿334—Petition must plead consideration.

One suing on contract must plead, as well as prove, a valid consideration for the undertaking; none being presumed.

5. Contracts ⬤⟿333(5)—Must be pleaded so as to show damages flowing from breach.

The contract for breach of which damages are sought must be pleaded with such particularity that the damages resulting must flow as a natural sequence of its breach.

6. Chattel mortgages ⬤⟿161—Power in mortgage defense to taking possession.

Defendant having the right, under chattel mortgage pleaded and in evidence, to take possession for default shown, cannot be held liable for doing so, though also pleading consent of mortgagor to such taking and not showing it otherwise than by the mortgage.

7. Trial ⬤⟿214—Court should construe chattel mortgage.

The court should construe to the jury a chattel mortgage in evidence and relied on as justification for mortgagee taking possession of the chattels.

8. Trial ⬤⟿352(5)—A special issue should not embrace two distinct causes of action.

The court should not, in one special issue for the jury, embrace two separate and distinct causes of action.

9. Sales ⬤⟿418(2)—Damages for nondelivery difference between contract and market value.

The measure of damages for breach of contract to furnish goods for a store is the difference between the contract price and their value at the time and place at which they should have been delivered.

10. Sales ⬤⟿416(2)—Evidence of prospective sales admissible in action for nondelivery.

Plaintiff in action for damages for nondelivery of goods could state his prospects for making sales of goods.

II. Appeal and error ⬤⟿1050(I)—Stating population of town in action for damages to business held harmless.

Any error in allowing plaintiff, in action for breach of contract to furnish goods for his store and in closing it up, to state the population of the town, held harmless.

12. Principal and agent ⬤⟿116(I)—Agent's apparent powers not affected by undisclosed limitations.

Instructions by the principal to his agent, or limitations on his authority, which are not disclosed, cannot affect the agent's apparent powers, as regards liability of the principal to one with whom the agent deals.

———

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Eastland County; Joe Burkett, Judge.

Action by C. S. Jamison against the J. M. Radford Grocery Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Davidson & Hickman, of Abilene, for appellant.

Grisham Bros., of Eastland, and W. J. Cunningham, of Abilene, for appellee.

WALTHALL, J. C. S. Jamison brought this suit against the J. M. Radford Grocery Company, a corporation, to recover damages, actual and exemplary, on an alleged breach of contract to sell to him, on credit, $2,000 worth of groceries, and to extend to him additionally a line of credit for goods, wares, and merchandise in a like amount, and to sell to him a certain storehouse in the town of Ranger and a Ford automobile truck, the price to be paid for the store building and truck being $700, for which sum he executed to appellant his promissory note, payable on demand, securing same by a mortgage on said house and truck.

Appellee alleged performance on his part of the terms of the contract, and a breach, in part, of the terms of the contract on the part of appellant. Appellee alleged that appellant delivered to him only a portion of the goods it had agreed to sell and deliver to him, and failed and refused to deliver to him the balance, and refused to extend to him the line of credit; that appellant by force, threats, and fraud took possession of said storehouse and truck, excluding appellee therefrom, and carried away certain of appellee's goods, injured his credit, etc.

Appellant answered by general demurrer, special exceptions, general denial, and special denial of the alleged contract, except the sale to appellee of the store building and truck and the execution of the note and mortgage on the building and truck to secure the note; "denies that it ever at any time entered into a contract or agreement with plaintiff to furnish him a line of credit to the amount of $2,000, or in any other amount whatever, and specially denies that any of its agents, representatives, or employés ever made any such agreement with plaintiff," and that if any agent or representative or employé ever attempted to make such contract such act was wholly unauthorized by appellant and outside the scope, or apparent scope, of the authority of such agent; that in taking possession of the store building, truck, and property mentioned it acted in strict compliance with the terms of said chattel mortgage. Appellant by cross-action pleaded that at the request of appellee it sold and delivered to him certain goods, wares, and merchandise for which appellee agreed to pay appellant at the time of their purchase and delivery, which

appellee had failed to do, and for which appellant prayed judgment.

By supplemental petition appellee demurred generally to appellant's answer, made general denial, and pleaded that appellant is estopped from denying the authority of its agent to make the contract in question; that the contract after made was ratified by appellant and acted upon by appellee without knowledge of any lack of authority of the agent.

The case was presented to the jury upon the following issues, to which the jury made the findings indicated:

"No. 1. Did defendant agree to furnish $2,000 stock of goods to plaintiff with which to begin business, and to extend a $2,000 line of credit for his store at Ranger? Answer Yes or No." Answer: Yes.

In the event the answer was Yes, then:

"No. 2. Did defendant furnish plaintiff $2,-000 worth of goods to begin with? Answer Yes or No." Answer: No.

"No. 3. Did defendant extend plaintiff a $2,000 line of credit after his business was opened? Answer Yes or No." Answer: No.

In the event No. 1 was answered Yes, and Nos. 2 and 3 answered No, then:

"No. 4. Was plaintiff damaged by reason of the failure of defendant, if any, to furnish the full $2,000 opening stock, and to extend thereafter to plaintiff a $2,000 line of credit? Answer Yes or No." Answer: Yes.

If No. 4 is answered Yes, then:

"No. 5. How much was plaintiff damaged by such failure of defendant, if any?" Answer: $1,000.

"No. 6. Did defendant have permission to seize and carry away the car (truck) sold plaintiff, and also to take certain goods away in said car? Answer Yes or No." Answer: No.

"No. 7. Did defendant have plaintiff's permission to take over said stock of goods and close up plaintiff's store? Answer Yes or No." Answer: No.

"No. 8. Did the acts of defendant in taking the car and goods and closing the doors of plaintiff's business above inquired about, if defendant did do so, damage plaintiff in his credit in the matter of carrying on his grocery business at Ranger? Answer Yes or No." Answer: Yes.

If No. 8 is answered Yes, then:

"No. 9. How much has plaintiff been damaged by reason of the taking of said car and goods, by plaintiff (evidently meaning defendant) and closing the doors of plaintiff's business by defendant, if any?" Answer: $1,500.

On the jury's findings the court entered judgment for appellee in the sum of $2,500, less the amount of $797, proven by defendant and admitted by plaintiff on plaintiff's counterclaim.

## Opinion.

[1-5] The first and second assignments are presented to the action of the court in overruling appellant's special exceptions to the petition in its allegations as to the contract entered into for the line of credit appellant

was to extend to appellee. The exceptions presented are: That if such an agreement was made it was illegal and void; that said allegations are too vague and indefinite to constitute a cause of action, and that same fails to show a valuable and valid consideration therefor; that the damages alleged to have been sustained are too remote, uncertain, speculative, and indefinite. The pleading is too lengthy to set it out in full, but we copy the portion in which the contract as to the line of credit is stated:

"Plaintiff is by trade a retail merchant and on or about the 27th day of September, 1918, he was approached by defendant, who was then and is yet a wholesale grocery merchant in the town of Cisco, Tex., and then and there, in the town of Ranger, in Eastland county, Tex., entered into a contract with said defendant by the terms of which plaintiff agreed to purchase his groceries from the defendant, and the defendant contracted and bound itself to sell to the plaintiff on credit $2,000 worth of groceries for plaintiff's said business, and to extend to the plaintiff a line of credit for goods, wares and merchandise in said sum."

To allege that appellant agreed and bound itself to extend to plaintiff a line of credit for goods, wares, and merchandise, we think, is not a sufficient statement of a contract. A declaration in an action on a contract must aver every material part of it. So much of the contract as is essential to the cause of action should be specially set out. The material facts of a contract cannot be presumed; they must be alleged, in order to show a breach or nonperformance. A declaration in an action on a contract which does not state the time at which the defendant should have performed is bad on demurrer. Where no time for performance is specified in a contract, it should be averred that it was to be performed on request, or within a reasonable time, and that such request was made or that a reasonable time has elapsed. If appellant has obligated itself to extend to appellee a line of credit for goods, wares, and merchandise to the extent in value of $2,000, many facts collateral to the main fact arise in its performance as to the time, place, and method of performance: When and where and in what quantities were deliveries of the goods to be made? For how long a time was the line of credit to extend? What are the terms upon which payment is to be made? Was demand or notice to be given by appellee as to the time or times when the goods were to be delivered? The petition alleges no consideration. In our system of pleading no presumption of consideration exists, and one seeking to enforce a contract, or to recover damages for its breach, is required to both plead and prove a valid consideration for the undertaking. The question presented under the second assignment is directed to the statement of the contract, and not to

the evidence offered nor the rule for the measure of damages. While no hard and fast rule for ascertaining profits, for the loss of which a recovery may be had, can be laid down, such profits must be determined according to the circumstances of each particular case and the subject-matter of the contract. The contract must be stated with such particularity that the damage resulting must flow as a natural consequence of its breach. This, in our judgment, the petition does not do. We have concluded that the petition is subject to the objections pointed out in each of the exceptions.

The third, fourth, and fifth assignments are directed to the question of the sufficiency of the evidence on the issue of the agency of C. R. McAdams, as the one who represented appellant in the making of the contract. The issue of the agency of McAdams was not directly passed upon by the jury. Nor was the question of the ratification by appellant of the acts done by McAdams found by the jury. As the case must be reversed, we think it best not to discuss at this time the sufficiency of the evidence to establish the agency of McAdams, or the ratification of the acts of McAdams by appellant. While the question of the sufficiency of the petition in pleading ratification is not raised, we suggest that the pleading on that issue, in view of another trial, be amended so as to embrace all of the facts necessary to constitute the ratification.

[6, 7] Appellee executed to appellant a chattel mortgage on the store building in which he was carrying on his grocery business and on the truck, to secure the payment of the $700 note and any sum or sums then due or thereafter to become due on his open account with appellant. The mortgage provides that should any of the agreements or conditions be broken or violated at any time, or should appellant at any time feel unsafe or insecure, or upon the failure to pay said indebtedness or any part thereof at maturity, then, in either event, the whole of the mentioned indebtedness may become due and payable instanter at the option of appellant, without notice, and the appellant by the terms of the mortgage was then authorized and empowered to enter upon the premises, seize and take into his possession all or any part of the property wherever found, and to sell the same at public sale, and providing for the usual manner of advertising the property and the disposition of the proceeds from the sales. The mortgage was to remain in force until all of the indebtedness provided for was paid.

Appellee admitted the execution and delivery of the mortgage in his pleading, and appellant pleaded the execution of the mortgage, that the indebtedness secured thereby was past-due and unpaid, and that appellant, as authorized, and by the terms of the mortgage, took actual possession of the mortgaged

property. By the sixth and seventh questions submitted to the jury, the jury found that appellant did not have appellee's permission to seize and carry away the truck and take away certain goods and to close up appellee's store.

To the eighth and ninth questions the jury found that by the taking of the truck and goods and closing the doors of the store building appellee was damaged in the sum of $1,-500. To the findings of the jury on the issues above and the judgment based thereon, and the refusal of the court to give in charge appellant's requested special charge No. 2, to the effect that appellant had the legal right to take possession of the truck and house under the terms of the mortgage, appellant bases his sixth and seventh assignments. Now, the appellant pleaded that he had the consent of appellee to take possession of the house and truck, and evidence was offered on that issue. The jury found against appellant on that question, but the appellant also introduced the mortgage and asked the charge above referred to. In our judgment the court should have construed to the jury the chattel mortgage, and, failing to do so, should have given the requested special charge. Wedig v. San Antonio Brewing Ass'n, 25 Tex. Civ. App. 158, 60 S. W. 567; Nichols v. Paine, 52 Tex. Civ. App. 87, 113 S. W. 972; Jesse French P. & O. Co. v. Elliott, 166 S. W. 29; State Exchange Bank v. Smith, 166 S. W. 666; Miller v. Poff, 217 S. W. 399.

[8] The court should not have embraced the two separate and distinct causes of action in one question as was done in question No. 1 and complained of in the eighth assignment. T. & N. O. Ry. Co. v. Turner, 199 S. W. 868; K. C., M. & O. Ry. Co. v. Weatherby, 203 S. W. 793.

[9] By the eighth and ninth assignments complaint is made of the rule for the measure of damages stated by the court in submitting question No. 5. The measure of damages stated in the charge, we think, is affirmative error. The measure of damage under the contract embraced in the question complained of is the difference between the contract price of the goods and their value at the time and place at which, under the contracts, they ought to have been delivered. Ullman, Lewis & Co. v. Babcock, 63 Tex. 68; Hamilton v. Schumacher (App.) 15 S. W. 715.

[10] The court was not in error, we think, in permitting the appellee to state his prospects for making sales of goods, as complained of in assignments 10 and 11. We do not construe the cases referred to in appellant's brief as in point.

[11] To permit appellant to testify as to the population of Ranger, if error, is not reversible error.

[12] Assignments 12 and 13 complain of the exclusion of the evidence of witness St. John as to his instructions from his principal pertaining to selling appellee his opening stock of goods, and the exclusion of the evidence of witnesses Gill, McAdams, and St. John relative to the authority or lack of authority of McAdams to make the contract with appellee as to the sale of the opening stock of goods, and as to the extension of a line of credit complained of in the twelfth (the second twelfth) and thirteenth assignments. In this there was no error. The evidence does not show that the want of authority of the agent was disclosed at the time of the making of the alleged sale of goods, and at the time of alleged giving the line of credit. The rule in this state is that instructions by the principal to an agent, or limitations upon his authority, which are not disclosed, cannot be permitted to affect the agent's apparent powers. International & G. N. Ry. Co. v. True et al., 23 Tex. Civ. App. 523, 57 S. W. 977; Mechem. Ag. § 279.

The fourteenth assignment cannot be considered, as the statement does not show what the question was, and we cannot know whether or not the answer was responsive. The fifteenth assignment is without merit. Some of the evidence complained of in the sixteenth assignment, we think, was competent. It might tend to show that appellee could have sold the goods if he had them in stock. There is no merit in the seventeenth assignment.

For errors indicated, the case is reversed and remanded.

HIGGINS, J. I concur in the conclusion that this case should be reversed and remanded. My concurrence is limited to that final conclusion.